**Sidney BURGER, Plaintiff,**

v.

**CPC INTERNATIONAL, INC., Ciba-Geigy Corporation, Delmar D. Walker, Paul W. Krueger, Ralph L. Primm, Robert H. Spry, Leon Steele, Robert L. Walston, Richard C. Funk, Denton E. Alexander, Charles P. Durkin, Jr., Kenneth L. Kneif, Harry W. Lindhorst, A. Malcolm McVie, Beverly W. Warner and Dillon, Read & Co., Inc., Defendants.**

No. 76 Civ. 2106 (LFM).

United States District Court,
S. D. New York.

Aug. 31, 1977.

Crystal & Driscoll, P. C., New York City, for plaintiff by Stephen L. Crystal, New York City.

Cahill, Gordon & Reindel, New York City, for defendants CPC International, Inc., Knief and Warner by Leonard A. Spivak, New York City.

Sullivan & Cromwell, New York City, for defendants Ciba-Geigy Corp., Walker, Krueger, Primm, Steele, Walston, Funk, Alexander, Lindhorst and McVie by Marvin Schwartz and Charles W. Sullivan, New York City.

Debevoise Plimpton Lyons & Gates, New York City, for defendants Durkin and Dillon, Read & Co., Inc., by Robert J. Geniesse, New York City.

Robert P. Borsody, New York City, for defendant Spry.

MacMAHON, District Judge.

The parties in this class action apply for approval of a proposed settlement, pursuant to Rule 23(e), Fed.R.Civ.P., and counsel for plaintiff apply for an allowance of attorney's fees and disbursements.

Plaintiff alleges violations by defendants of Section 10(b) of the Securities Exchange Act of 1934 ("the Exchange Act"), 15 U.S.C. § 78j(b), Rule 10b–5, 17 C.F.R. § 240.10b–5, and Section 11 of the Securities Act of 1933 ("the Securities Act"), 15 U.S.C. § 77k.

This action arises out of the public offering by defendant, CPC International, Inc. ("CPC"), of 75% of the shares of the common stock of its wholly-owned subsidiary, Funk Seeds International, Inc. ("Funk"), on August 29, 1972, pursuant to a registration statement and prospectus. Plaintiff, a purchaser of this stock, alleges that the registration statement, prospectus, and various other documents issued by defendants were false and misleading in that, among other things, the documents failed to disclose that Funk was seriously considering altering or terminating its franchise agreements with Funk Associates ("Associates") (who produced and marketed seeds under Funk's name), and that Funk intended to sell its

seeds directly in the areas formerly serviced by Associates, as a result of which Funk initially would incur substantial advertising and marketing expenses.

Furthermore, plaintiff alleges that the documents were false and misleading in failing to disclose that Funk was under a contractual obligation to repurchase the unsold inventory of seed from terminating Associates and that the cost to repurchase such seeds would be approximately $15,000,-000.

The complaint alleges that Associates learned of the proposed Funk action and as a result seven of the thirteen Associates terminated their contracts with Funk in December 1972. Funk shares declined from the offering price of $24.00 to $6.00 after Associates terminated and after the effect of those terminations became known.

In a memorandum decision dated December 30, 1976, we certified the class as all purchasers of Funk common stock from August 29, 1972 to October 10, 1973. By a revised order and order to show cause, dated May 18, 1977, we directed that notice of the pendency of the class action and of the proposed settlement be mailed to the class by May 20 and that objections to the settlement be filed with the clerk of the court by June 23, 1977. No objections were filed.

The proposed settlement was submitted to us for approval on June 21, 1977. It provides for the release of defendants from all claims in connection with the subject matter of the lawsuit, in exchange for defendants' creation of a class settlement fund of $950,000. Defendants will also reimburse the fund for up to $15,000 for expenses relating to notice to the class and the administration and disbursement of the fund. The fund will be distributed pro rata to each member of the class who did not opt-out and who submits timely and satisfactory proof of an actual loss. The recognized loss for each such class member will be the difference between the purchase price and the sales price.

■ The proponents of the settlement have the burden of showing (1) that it is not collusive but was arrived at after arm's-length negotiations; (2) that the proponents are counsel experienced in similar cases; (3) that there has been sufficient discovery to enable counsel to act intelligently; and (4) that the number of objectants or their relative interest is small. See *Feder v. Harrington*, 58 F.R.D. 171, 174–75 (S.D.N.Y.1972). If the proponents of the settlement establish the foregoing facts, then a presumption in favor of the settlement arises. *Id.*

■ We are fully satisfied that those facts are established here. The settlement was reached only after intensive, vigorous and arm's-length negotiations conducted over a three and one-half month period. There is no hint of collusion. Counsel for plaintiff are experienced, able and respected members of the bar of this court, who have represented numerous clients in similar cases. They pressed on with trial preparations during settlement negotiations, and we are convinced that they would have proceeded to trial if it were in their client's best interests. They conducted extensive discovery, including interrogatories, depositions and production and inspection of over 10,000 pages of documents. Finally, there were no objectants to the proposed settlement, although over 7,100 class members were notified. The absence of objectants alone is persuasive evidence of the fairness of the settlement. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974).

■ Even though the facts necessary to raise the presumption in favor of the settlement have been established to our satisfaction, that presumption must still withstand the test of plaintiff's likelihood of success had the case proceeded to trial. A determination of plaintiff's probability of ultimate success requires an educated estimate of the strength and weaknesses of plaintiff's case, considering the novelty and complexity of the legal questions, the issues of fact, the expense involved, and the likely duration of the trial. We must then compare the likely rewards of litigation with the terms of the settlement in order to evaluate and determine the fairness and

adequacy of the settlement. *Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424–25, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968).

There are serious questions of law and fact relating to the elements of plaintiff's Rule 10b–5 and Section 11 claims that render any recovery problematical. A substantial question exists as to the materiality of defendants' failure to disclose Funk's possible termination of Associates and direct sale of seeds.

■ The test of materiality is whether a reasonable person would have attached importance to the omitted facts in determining his choice of action. *List v. Fashion Park, Inc.,* 340 F.2d 457, 462 (2d Cir.), *cert. denied sub nom. List v. Lerner,* 382 U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965). It is arguable that no reasonable person would have attached importance to the omitted facts because Associates' discovery of possible terminations by Funk and their resulting cancellations of their contracts with Funk were very unlikely. Furthermore, the materiality of Funk's failure to disclose its contractual obligation to repurchase the unsold inventory of terminating Associates is also subject to considerable doubt. The materiality of that omission depends in part on the probability that Associates would terminate, which, as we have indicated, is subject to widely varying appraisals. See *SEC v. Geon Industries, Inc.,* 531 F.2d 39, 47 (2d Cir. 1976). There is also the possibility that a jury would find that Funk made full disclosure in an extensive press release dated March 15, 1973, which would preclude any claims after that date.

■ Plaintiff would also have to prove scienter in order to recover on his Rule 10b–5 claim. This is a heavy burden and would require the jury to conclude from a complicated series of events and numerous documents that defendants intended to deceive, manipulate, or defraud plaintiff. See *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). We are far from certain that a jury would find the requisite scienter enabling plaintiff to recover.

■ Plaintiff would not have to prove scienter but only negligence to recover on his Section 11 claim against CPC. However, the three-year limitations period would bar this claim, unless the statute is tolled, because this action was not filed until May 11, 1976, more than three years after the Funk stock was offered to the public on August 29, 1972. See Section 13 of the Securities Act, 15 U.S.C. § 77m. However, in *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), the Supreme Court indicated that a prior action against a defendant would toll the statute of limitations if the later action involved exactly the same claim for relief based on the same facts. *Id.* at 467, 95 S.Ct. 1716. Although an earlier action against CPC based on the same facts as this action was filed within the three-year limitations period, *Brick v. CPC Int'l,* Docket No. 74 Civ. 4938 (July 26, 1973), it is questionable whether it would toll the statute because it did not allege a Section 11 but a Rule 10b–5 claim.

■ CPC's liability for any documents issued after the public offering on August 29, 1972 is also in considerable doubt. Plaintiff predicated CPC's responsibility for those documents on its alleged control of Funk, which would render it jointly and severally liable with Funk unless it acted in good faith and did not directly or indirectly induce the acts constituting the violation. See Section 20(a) of the Exchange Act, 15 U.S.C. § 78t.

However, CPC's control of Funk after the public offering is questionable because, depending on the date, it controlled only two of the eleven or thirteen members of Funk's board of directors and only 25% of its stock. Furthermore, Funk's Form 10–K filed with the Securities and Exchange Commission denied that Funk had any parent because CPC had not demanded election of its employees to Funk's board and Funk had control of its own proxy solicitation mechanism.

Even if plaintiff satisfied the other elements of his Section 10b–5 claim, he would

still have to prove damages caused by the alleged omissions. Such proof would involve a very complex set of facts and require expert testimony. Defendants would argue, perhaps successfully, that any drop in the price of Funk stock was due to nonactionable factors, such as the national economy, inflation, or the demand for grain, and was unaffected by the alleged omissions. In this regard, there was a drop in the price of Funk stock shortly after the offering, although Associates did not terminate until three months later. In any event, plaintiff faced considerable uncertainties in proving damages.

Considering these issues and the substantial risks and uncertainties that attend a jury trial, we cannot say that plaintiff's attorneys were wrong in agreeing to a settlement providing the class with approximately one million dollars. We will not substitute our judgment for that of experienced counsel, who, after extensive discovery, lengthy negotiations, and careful evaluation, have determined that the settlement represents a fair and realistic appraisal of their chances for ultimate success. See *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y.1971).

We, therefore, find that the proposed settlement is fair, adequate, and reasonable in all respects.

We must also consider counsel's application for an award of attorney's fees and disbursements.

It is now clear that the proper starting point for determining an award of counsel fees is the actual time spent by the attorneys, multiplied by a reasonable hourly rate to which attorneys of like skill in the area would typically be entitled for a comparable type of work. See *City of Detroit v. Grinnell Corp., supra*, 495 F.2d at 471; *Barnett v. Pritzker*, 73 F.R.D. 430, 431 (S.D.N.Y.1977).

Although the hourly rate awarded is somewhat lower than that suggested by counsel, we do not mean to impugn their competence or industry. On the contrary, counsel for plaintiff conducted this litigation with the highest professionalism, competence and diligence. Their efforts to bring this controversy to a speedy resolution are most commendable. Nevertheless, even though there were no objectants to the fee application, we are mindful of our duty in class actions to award fees with moderation and a jealous regard for the rights of those with an interest in the fund but who are not before the court. We must avoid even the appearance of "windfall fees." *City of Detroit v. Grinnell Corp., supra*, 495 F.2d at 469. With these factors in mind and in light of our awareness of typical fees for skilled attorneys in this district, we have determined that the hourly rate, set forth in the appended table, is fair, reasonable and adequate under all the circumstances.

After a dollar figure for straight billable time at the appropriate rate is determined, the court may increase that figure to arrive at a fee award by introducing into the calculus other less objective factors, primarily the attorney's "risk of litigation," i. e., the fact that "success is never guaranteed." See *City of Detroit v. Grinnell Corp., supra*, 495 F.2d at 471. However, the greater the probability of success on the merits or of the settlement, the less this consideration should serve to increase the fee award. *Id.*

The factors that comprise the "risk of litigation" include the institution or pendency of related actions and the novelty and complexity of the issues. Although there were two prior actions alleging essentially the same facts as the present case, both were settled on an individual basis without producing any substantial discovery. *Brick v. CPC Int'l*, Docket No. 74 Civ. 4938 (July 26, 1973); * *Simon v. Funk Seeds Int'l*, Docket No. 74 Civ. 645 (Feb. 7, 1974). Furthermore, we denied plaintiff's motion for class certification in the *Brick* action by memorandum decision dated February 23, 1976, and that denial was affirmed by the Court of Appeals. *Brick v. CPC Int'l*, 547 F.2d 185 (2d Cir. 1976).

* Case transferred to us from the District Court for the District of Columbia.

Therefore, those cases were of no tangible benefit to plaintiff here, and *Brick*, insofar as class action status was denied, was perhaps even an impediment.

We have already discussed the novelty and complexity of the litigation in our earlier consideration of the fairness of the proposed settlement. Suffice it to say that the issues of materiality, scienter and damages are sharply disputed and the risk of litigation correspondingly great. We also note that plaintiff's counsel, a two-lawyer firm, faced considerable opposition from defense counsel, primarily large New York firms. Nevertheless, plaintiff's counsel conducted extensive discovery and achieved class certification.

Taking all of these factors into consideration, we have determined the straight billable time fee should be increased by 30%. We have applied this "risk factor bonus" only to the time spent on the merits of the case. We have approved only the straight hourly rate for time spent on the preparation of the motion to approve the settlement, the fee application, and the administration of the settlement, since those activities did not involve any further "risk of litigation."

Accordingly, in light of the foregoing discussion and on the basis of the calculations set forth in the appended table, we have determined that $238,175.00 is a fair, reasonable and adequate total award for attorneys' fees and disbursements in this class action.

SO ORDERED.

APPENDIX *

|  |  | Hours | Rate | Total |
|---|---|---|---|---|
| A. | Fees Subject to "Risk Factor Bonus" | 1326.5 | $125 | $165,812 |
| B. | Fees Not Subject to "Risk Factor Bonus" |  |  |  |
| | a. Settlement Administration | 81 | $125 | $10,125 |
| | b. Fee Application and Settlement Approval | 52 | $125 | 6,500 |
| | Total Fees Not Subject to "Risk Factor Bonus" |  |  | $16,625 |
| C. | Expenses and Disbursements |  |  | $5,994 |
| D. | Totals on Class Action |  |  |  |
| | Fees Subject to "Risk Factor Bonus" |  |  | $165,812 |
| | + 30% "Risk Factor Bonus" |  |  | 49,744 |
| | Fees Not Subject to "Risk Factor Bonus" |  |  | 16,625 |
| | Disbursements and Expenses |  |  | 5,994 |
| |  | | TOTAL AWARD | $238,175 |

* Figures are rounded to the nearest dollar.