The MUNSEY TRUST, Plaintiff,

v.

SYCOR, INC., Drexel Burnham & Co. Incorporated, Samuel N. Irwin, Herbert S. Amster, K. Dieter Heidrich, G. William Ince, Raymond P. Kavlick, Paul C. LaVoie, Richard A. Phillips, Henry M. Lapeza, Frederick B. Dean, James E. Dingman, Michael E. Gellert, Harvey G. Melhouse, Theodore J. Smith, Trude C. Taylor, Electronic Memories & Magnetics Corporation, Windcrest Partners, Viking, Inc., Delta N.V., Coordinated Apparel, Inc., Gavrin Associates, Harold Lamport, Account R Partnership, Anthony M. Lamport, Trustee, and Anthony M. Lamport, Defendants.

No. 76 Civ. 5182 (LFM).

United States District Court, S. D. New York.

Sept. 28, 1978.

1. *Cf. Hadfield v. Mitre Corp.*, 422 F.Supp. 460 (D.Mass.1976), *rev'd on other grounds* 562 F.2d 84 (1st Cir. 1977).

Marshall, Bratter, Greene, Allison & Tucker, New York City, for defendants Sycor, Inc., Herbert S. Amster and Samual N. Irwin by Charles H. Miller and Wayne Matus, New York City.

Hughes, Hubbard & Reed, New York City, for defendants Drexel Burnham & Co. Incorporated and Michael E. Gellert by George Davidson and Melinda Roberts, New York City.

Donovan, Leisure, Newton & Irvine, New York City, for defendants Electronic Memories & Magnetics Corporation, Windcrest Partners, Viking, Inc., Gavrin Associates, Coordinated Apparel, Inc., Harold Lamport Account R Partnership, Anthony M. Lamport, Trustee, Anthony M. Lamport, Frederick B. Dean, James E. Dingman and Trude C. Taylor by Allan R. Freedman and Doris K. Shaw, New York City.

Debevoise, Plimpton, Lyons & Gates, New York City, for defendants K. Dieter Heidrich, G. William Ince, Raymond P. Kavlick, Paul C. LaVoie, Richard A. Phillips, Henry M. Lapeza, Harvey G. Mehlhouse and Theodore J. Smith by Robert J. Geniesse, New York City.

Cole & Deitz, New York City, for objectants Independence Fund, Inc., Travelers Equities Fund, Inc. and The Travelers Fund B for Variable Contracts by Robert M. Kerrigan, New York City.

Rabin & Silverman, New York City, for plaintiff by I. Stephen Rabin and Michael D. DiGiovanna, New York City.

## OPINION

MacMAHON, District Judge.

The parties in this securities fraud class action apply for approval of a proposed settlement. Rule 23(e), Fed.R.Civ.P. Counsel for plaintiff also apply for an allowance of attorneys' fees and disbursements.

The complaint alleges that defendants Sycor, Inc. ("Sycor"), its officers and directors, certain sellers of Sycor stock, and Drexel Burnham & Co., managing underwriter of a public offering of Sycor stock, violated Sections 11, 12(2) and 17(a) of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77*l* and 77q, and Section 10(b) of the Securities

Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b–5 thereunder, 17 C.F.R. § 240.10b–5.

Plaintiff, a former shareholder of Sycor, alleges that defendants unlawfully conspired to use a false and misleading prospectus in connection with a public offering of Sycor stock, in furtherance of a common scheme to defraud plaintiff, by inducing it to purchase the stock at an artificially high price. Plaintiff claims that the prospectus was false and misleading because it failed to reveal the existence of new Brazilian import restrictions, which could adversely affect sales of Sycor's products, and the importance of the Brazilian market to Sycor.

After completion of discovery and on the eve of trial, the parties entered into a stipulation of compromise and settlement by which they agreed to settle this action, subject to court approval, in consideration of $950,000.00. Proper notice of the proposed settlement was sent to all class members, and the instant application for approval of the settlement was made. After hearing the parties and the objectants and after extending the time for the filing of further objections, none of which were forthcoming, we approve the proposed settlement.

■ The standards governing approval of a proposed settlement are well established. The proponents of the settlement must demonstrate: (1) that it is not collusive but was arrived at after arms' length negotiation; (2) that the proponents are counsel experienced in similar cases; (3) that there has been sufficient discovery to enable counsel to act intelligently; and (4) that the number of objectants or their relative interest is small. If the foregoing is established, then a presumption in favor of the settlement arises. *Feder v. Harrington*, 58 F.R.D. 171, 174–75 (S.D.N.Y.1972).

■ We conclude that the above test is satisfied here. The settlement was reached only after intensive adversarial negotiations free from even a hint of collusion. Counsel for plaintiff are able and respected members of the bar of this court, who are experienced in many cases of this nature. They

persevered with trial preparation during settlement negotiations, and there can be no doubt that they would have proceeded to trial had that been in their client's best interests.

Furthermore, the discovery had here was extensive. At least twenty depositions were taken of defendants and third-party witnesses alike. Broad interrogatories were propounded and answered. Approximately 50,000 documents were produced and inspected. With this discovery complete and with a trial date less than two weeks away, counsel were well situated to evaluate intelligently the strength and weaknesses of their cases.

■ Finally, there have been no objections to the substance of the proposed settlement. Although approximately 1,000 notices of settlement were originally mailed to class members, only three objectants have come forward, challenging only the breadth of the release to be executed by plaintiff. The absence of substantive objections is persuasive evidence of the fairness of the settlement. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974); *Burger v. CPC Int'l, Inc.*, 76 F.R.D. 183, 186 (S.D.N.Y.1977).

Furthermore, the objection raised is without merit. The objectants demur to the scope of the release, which would free defendants from further liability for all claims which have been or "which *might have been asserted*" in this action. It seems to us that such a release is eminently proper if the defendants are indeed to "buy their peace" through this settlement, as properly they should. Should the defendants remain subject to suit on claims arising out of the very occurrences at issue here, the settlement would hardly be efficacious in terminating this litigation, and the defendants could rest only upon the running of the statute of limitations. See *Fox v. Glickman Corp.*, 253 F.Supp. 1005, 1013 (S.D.N.Y.1966). *Cf. American Emp. Ins. Co. v. King Resources Co.*, 556 F.2d 471, 475, 478 (10th Cir. 1977). In any event, the objectants fail to specify any particular prejudice resulting from the broad release,

and we will not withhold approval of the settlement upon mere speculation that some unknown plaintiff may someday unearth a claim heretofore unasserted. Thus, the objection raised here does nothing to alter our view that the proposed settlement is fair.

In light of the foregoing, a presumption arises in favor of the settlement. That presumption, however, must still withstand the test of plaintiff's likelihood of success had the case proceeded to trial. *Feder v. Harrington, supra,* 58 F.R.D. at 175. As we stated in *Burger v. CPC Int'l, Inc., supra,* 76 F.R.D. at 186-87:

> "A determination of plaintiff's probability of ultimate success requires an educated estimate of the strength and weaknesses of plaintiff's case, considering the novelty and complexity of the legal questions, the issues of fact, the expenses involved, and the likely duration of the trial. We must then compare the likely rewards of litigation with the terms of the settlement in order to evaluate and determine the fairness and adequacy of the settlement. *Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424-25, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968)."

In this case, close questions of law and fact surrounded the issue whether the challenged statements in the Sycor prospectus were material. Plaintiff challenged the following passage from the prospectus:

> "The Company [Sycor] believes that the risks attendant to the Company's foreign revenues are not substantially greater than those attendant to revenues generated with the United States. Because its products are distributed to users in 38 countries, the impact of political or economic dislocations in any given country is likely to be minimal."

Discovery, however, revealed that Sycor's Brazil sales, effected through a subsidiary of Olivetti Corp., amounted to only 6% of Sycor's total sales. Thus, the materiality of any misstatements concerning the effect of Brazilian import restrictions was cast in doubt. Furthermore, Sycor's overall foreign sales increased from 1975 to 1976, so that, arguably, it became immaterial that the Brazilian sales declined.

Plaintiff, on the other hand, intended to prove that the 1975–76 foreign sales increase was far less than Sycor anticipated, and that the failure to realize its expectation resulted from the poor performance in the Brazilian market. On balance, however, plaintiff's dilemma was real; it was faced with proving that the prospectus was materially false and misleading with regard to the Brazilian import restrictions, in spite of Sycor's rising foreign sales and relatively small Brazilian market. In view of the difficulties inherent in proving this aspect of plaintiff's case, we cannot say that compromise was unwise.

Further, with respect to the claim under Section 10(b) and Rule 10b–5, the plaintiff at trial would have borne the "heavy burden" of proving scienter, *Burger v. CPC Int'l, Inc., supra,* 76 F.R.D. at 187, a burden we are not at all sure plaintiff could easily carry here in view of plaintiff's own admission that defendants' witnesses were "articulate and personable" and probably credible.

Finally, plaintiff would have had difficulty in proving damages much greater than the $950,000.00 offered in settlement. Although the price of Sycor stock declined during the class period, so did that of Sycor's competitors. Thus, a substantial portion of Sycor's decline may arguably be traced to general business conditions rather than the specific Brazilian import restrictions at issue here. Further, there is little doubt that at least a portion of the price decline was also due to changes in federal income tax laws and increased expenses due to an acceleration of the rate of investment in Sycor's domestic sales force. Thus, on balance, it is no easy matter to conclude that the damages provable at trial would have been much greater than the amount offered in settlement. Considering the foregoing issues and the risks that would have attended a jury trial, we cannot say that plaintiff's attorneys were wrong in agreeing to the $950,000.00 settlement pro-

posed here. We therefore find that the proposed settlement is fair, adequate and reasonable in all respects.

■ We turn next to the application of plaintiff's counsel for an allowance of fees and disbursements. The starting point for a determination of such fees is the actual time spent by the attorneys, multiplied by a reasonable hourly rate to which attorneys of like skill in the area would typically be entitled for a comparable type of work. The resulting figure may then be increased by introducing into the calculus the less objective factor of the attorneys' "risk of litigation." The greater the probability of success on the merits, the less this factor should increase the fee award. *City of Detroit v. Grinnell Corp., supra,* 495 F.2d at 471.

The factors which comprise the "risk of litigation" include the institution or pendency of related actions, and the novelty or complexity of the issues. *Burger v. CPC Int'l, Inc., supra,* 76 F.R.D. at 188–89. Here, no related actions which might have eased the burden of plaintiff's attorneys were filed. We have already discussed the difficulties faced by plaintiff's attorneys on the merits of this case, and we need not repeat our discussion here. Suffice it to say that issues of materiality, scienter and damages were sharply disputed and increased the risk of litigation. Further, despite considerable opposition from large New York firms, plaintiff's firm, a relatively small one, conducted extensive discovery and achieved class certification.

■ Taking these factors into consideration, we conclude that the straight billable time fee should be increased by 30%. We apply this "risk factor bonus" only to the time spent on the merits. We approve only a straight hourly fee for the time spent on the preparation of the instant motion, and an hourly fee at a somewhat lower rate for time spent on administration of the settlement. See *Burger v. CPC Int'l, Inc., supra,* 76 F.R.D. at 189.

Accordingly, the motion for approval of the settlement is granted. In light of the foregoing and on the basis of the calculations set forth in the Appendix, we conclude that $279,593.93 is a fair and reasonable allowance for attorneys' fees and disbursements in this class action.

So ordered.

## APPENDIX *

| | | Hours | Rate | Total |
|---|---|---|---|---|
| A. | Fees Subject to "Risk Factor Bonus" | 1440 | ** | $168,431.25 |
| B. | Fees Not Subject to "Risk Factor Bonus" | | | |
| | a. Settlement Administration | 250 + | $ 50 | $ 12,500.00 |
| | b. Fee Application and Settlement Approval | 265 | $135 | 35,775.00 |
| | Total Fees Not Subject to "Risk Factor Bonus" | | | $ 48,275.00 |
| C. | Expenses and Disbursements | | | $ 12,358.30 |
| D. | Totals on Class Action | | | |
| | Fees Subject to "Risk Factor Bonus" | | | $168,431.25 |
| | + 30% "Risk Factor Bonus" | | | 50,529.38 |
| | Fees Not Subject to "Risk Factor Bonus" | | | 48,275.00 |
| | Disbursements and Expenses | | | 12,358.30 |
| | | TOTAL AWARD | | $279,593.93 |

---

* Figures are rounded to the nearest dollar.

** The hourly rates vary with the experience of the particular attorney and are set forth in the affidavit of I. Stephen Rabin in support of the instant application.

+ Plaintiff's attorneys have suggested that they will spend between 250 and 300 hours on these matters. We have used the suggested minimum figure.