Gregory JEZARIAN, Geraldine Jezarian, and Lonetown Company, Plaintiffs,

v.

Frank CSAPO, E. A. Bartz, John W. Castellucci, Richard Karkow, Theodore Kheel, Paul M. Kuveke, Jr., C. W. Marshall, Edwin J. Schulz, Harper Sibley, Jr., David Stirling, Jr., William G. Stirling, Estate of David Stirling, Sr., Carl L. Wren, Harold M. Yanowitch, Peat, Marwick, Mitchell & Co., Merrill Lynch, Pierce, Fenner & Smith, Inc., Chemical Bank, and Harris, Kerr, Forster & Co., Defendants.

No. 72 Civ. 1671.
MDL–126.

United States District Court,
S. D. New York.

Dec. 12, 1979.

Pomerantz, Levy, Haudek & Block, New York City, for Jezarian plaintiffs.

Martin S. Handelman, Rochester, N. Y., Milberg, Weiss, Bershad & Specthrie, New York City, Richard D. Greenfield, Bala-Cynwyd, Pa., for Jones plaintiffs.

Gene Mesh Co., L. P. A., Cincinnati, Ohio, for DeCoursey plaintiffs.

Finley, Kumble, Wagner, Heine & Underberg, New York City, for Aguirre plaintiffs.

## MEMORANDUM

BONSAL, District Judge.

Following a hearing on September 20, 1979, this Court, on October 29, 1979, approved the partial settlement of these actions [1] entered into between the class plaintiffs and three of the defendants, Merrill Lynch, Pierce, Fenner & Smith, Inc.; Peat, Marwick, Mitchell & Co.; and Harris, Kerr, Forster & Co. ("the settling defendants") and the Plan for Distribution. Pursuant to the stipulation of settlement, the settling defendants have deposited $10,525,000 ("the settlement fund") in escrow, where it is drawing interest in excess of ten percent, the interest to be added to the settlement fund.[2]

1. These actions were consolidated by orders of the Judicial Panel on Multidistrict Litigation under the caption *In re Stirling Homex Securities Litigation*, 442 F.Supp. 547.

2. As of November 2, 1979, the settlement fund was $11,045,108.03, after adding interest and deducting expenses.

3. These notices stated that it was anticipated that the following applications for fees and disbursements would be made:

| | Fees | Disbursements |
| --- | --- | --- |
| Pomerantz Levy Haudek & Block | $1,800,000 | not exceeding $50,000 |
| Eric J. Klinger | 450,000 | |

Applications for attorneys' fees and disbursements and accountant's fees to be deducted from the settlement fund, notice of which was sent to the class, were considered at the September 20 hearing and reserved for later disposition. These applications are:

| | Fees | Disbursements |
| --- | --- | --- |
| I.  Joint Application | | |
| A.  Attorneys: | $1,997,000 | |
| Pomerantz Levy Haudek & Block Attorneys for Jezarian plaintiffs | | $52,636.25 |
| Martin S. Handelman Attorney for Jones plaintiffs | | |
| Milberg Weiss Bershad & Specthrie Attorneys for Jones plaintiffs | | 901.00 |
| Richard D. Greenfield Attorney for Jones plaintiffs | | 292.00 |
| Gene Mesh Co., L.P.A. Attorneys for DeCoursey plaintiffs | | |
| B.  Accountant: | | |
| Eric J. Klinger Accountant for class plaintiffs | 450,000 | |
| II.  Application of Finley, Kumble, Wagner, Heine & Underberg Attorneys for Aguirre plaintiffs | 210,000 | 15,882.70 |

Close to 25,000 notices of these applications were sent to the class members at least 47 days prior to the September 20 hearing advising that the applications would be considered at the hearing.[3] *See* Rule 11B of the Local Rules of the Southern District of New York; *City of Detroit*

| | Fees | Disbursements |
| --- | --- | --- |
| Milberg Weiss Bershad & Specthrie | 138,000 | $901 |
| Finley, Kumble, Wagner, Heine, Underberg & Grutman | 210,000 | not exceeding $17,000 |
| Gene Mesh Co., L.P.A. | 9,500 | |
| Martin S. Handelman | 7,500 | |
| Richard Greenfield | 42,000 | $292 |

The lawyers in the joint application have work/fee sharing arrangements. These lawyers seek a joint award of legal fees in the

*v. Grinnell Corporation*, 495 F.2d 448, 471–72 (2d Cir. 1974) (*Grinnell I*). No objections to the applications have been asserted.

## ATTORNEYS' FEES AND DISBURSEMENTS

In considering the applications for attorneys' fees, the Court will first determine the base fees by multiplying "the number of hours that each lawyer worked on the case by the hourly amount to which attorneys of like skill  .   .   .  would typically be entitled." *Grinnell I, supra* at 471. Since the services were rendered on a contingent basis, the base fees may be increased, if warranted. *See City of Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1098 (2d Cir. 1977) (*Grinnell II*); *Grinnell I, supra* at 471. Here, the base fees of the applicants may be calculated by multiplying their normal or non-contingent billing rates by the number of hours spent performing services that benefitted the class. *See Grinnell I, supra* at 473. The applicants have provided detailed information as to the number of hours spent, the normal billing rates and the base fees they seek:

|  |  | Hours Spent | Base Fee |
|---|---|---|---|
| I. | Joint Applicants | | |
|  | Pomerantz Levy Haudek & Block | 6,212.50 | $846,768 |
|  | Other joint applicants | 738 | 104,587 |
|  | Total | 6,950.50 | $951,355 |
| II. | Finley, Kumble, Wagner, Heine & Underberg | 1,377 | $136,780 |

### The Joint Application

·This litigation commenced on April 24, 1972, when Pomerantz Levy Haudek & Block ("Pomerantz Levy") filed the complaint in *Jezarian v. Csapo* 72 Civ. 1671. Pomerantz Levy represented the class plaintiffs throughout the litigation. Robert B. Block was the chairman of the committee of plaintiffs' counsel, a three-member committee formed on March 12, 1974 to coordinate pretrial discovery.[4] The activities performed by, and the normal billing rates of, the lawyers of Pomerantz Levy are set forth in detail in the affidavit sworn to on August 29, 1979 by Robert B. Block ("affidavit of Robert B. Block"), which states that Pomerantz Levy spent 6,212.50 hours on this action. Upon reviewing the joint application and the record herein, the Court finds that the services rendered by Pomerantz Levy, which include investigation, extensive discovery, motions, conferences, drafting and amending the complaint, identifying class members, communicating with class members and negotiating and drafting the settlement, were necessary for proper representation of their clients. Accordingly, the base fee of $846,768 is a reasonable starting point for determining the fee award for Pomerantz Levy. *See Grinnell I, supra* at 471.

The activities performed by, and the normal billing rates of, the other lawyers in the joint application are described in the affidavits of each of the joint applicants (which affidavits are included in the joint application) and in the affidavit of Robert B. Block. The number of hours spent by these lawyers breaks down as follows: Martin S. Handelman, 57 hours; Milberg Weiss Bershad & Specthrie, 439.50 hours; Richard D. Greenfield, 189.50 hours; and Gene Mesh Co., L.P.A., 52 hours. Upon reviewing the joint application and the record herein, the Court finds that the services rendered by the other lawyers in the joint application, which include discovery, motions and conferences, were necessary to the furtherance of the class action. Accordingly, the base fee of $104,587 for these lawyers is a reasonable starting point for determining their fee award.

The fee of $1,997,000 sought by the joint applicants is approximately 2.1 times

amount of $1,997,000. The joint application, unlike the notice sent to class members, does not specify what fees each would request as separate applicants. The joint application does, however, specify the fee sought by Eric J. Klinger, accountant for class plaintiffs, and the awards for disbursements sought by the joint applicants.

4. The other two members of this committee were: Jeffrey A. Fillman of Finley, Kumble, Wagner, Heine & Underberg and Bernard Feuerstein, who was later replaced by Melvyn I. Weiss, a member of Milberg Weiss Bershad & Specthrie, the firm with which Mr. Feuerstein was associated.

their base fee. In determining whether this increase is warranted, the Court must consider the risk of litigation, the complexity of the litigation, including any benefit of a prior judgment or decree in a case brought by the Government, the responsibility undertaken, the amount recovered and the standing of counsel at bar. *Grinnell I, supra* at 470–71.

It was pointed out in the Court's opinion approving the partial settlement and Plan for Distribution that, if the partial settlement had not been approved, plaintiffs would have been confronted with significant obstacles in establishing the claims asserted against the settling defendants. In addition, this case was complex, as it involved a new industry, novel accounting concepts and numerous allegedly illegal transactions; plaintiffs did not have the benefit of a prior Government action until more than four years after these actions were instituted, so that plaintiffs were required to engage in substantial discovery;[5] the amount of the settlement fund is substantial; and the attorneys for both plaintiffs and the settling defendants are highly competent and zealously represented their clients. Therefore, in rendering their services on a contingent fee basis, plaintiffs' attorneys undertook a substantial risk. *See Grinnell I, supra* at 470–71.

The multipliers used by courts in this district to determine fee awards vary considerably. *See, e. g., Weiss v. Drew National Corp.*, 465 F.Supp. 548 (S.D.N.Y.1979) (multiplier of 1.15 reflecting "the court's belief that the . . . case falls somewhere inbetween [a high risk case] and [a] minimized risks [case]"); *Kane v. Martin Paint Stores, Inc.*, 439 F.Supp. 1054, 1058 (S.D.N.Y.1977) (no multiplier since case was not complicated and the probability of success was "exceptionally high"); *City of New York v. Darling-Delaware*, 440 F.Supp.

1132, 1136 (S.D.N.Y.1977) (no multiplier for lawyers not involved in litigating complex or novel aspects of case; multiplier of 2 for counsel with primary responsibility; multiplier of 1.6 for pre-settlement hours and 2 for hours spent on settlement negotiation for counsel with high "risk factor" but "not as extensively involved in litigating the difficult class issues [as counsel with primary responsibility]"); *Blank v. Talley Industries, Inc.*, 390 F.Supp. 1 (S.D.N.Y.1975) (multiplier of 1.5); *Barnett v. Pritzker*, 73 F.R.D. 430, 434 (S.D.N.Y.1977) (multiplier of 1.33); *Dorey Corp. v. E. I. duPont de Nemours and Co.*, 74 Civ. 3826 (S.D.N.Y. Jan. 24, 1977) (multiplier of approximately 1.63); *Burger v. CPC International*, 76 F.R.D. 183 (S.D.N.Y.1977) (multiplier of 1.3); *City of Detroit v. Grinnell Corp.*, 68 Civ. 4026 (S.D.N.Y. April 21, 1976) (multiplier of 2). *See also Valente v. Pepsico, Inc.*, 454 F.Supp. 1228 (D.Del.1979) (multiplier of approximately 2.1); *In Re Equity Funding Corporation of America Securities Litigation*, 438 F.Supp. 1303, 1337–38 (C.D.Calif. 1977) (multiplier of 3 for counsel with primary responsibility; 2 for members of plaintiffs' steering committee; 1½ for associates in law firms of counsel with primary responsibility; 1 for counsel without major responsibility).

■ Having considered the *Grinnell* factors and the fact that some of the lawyers in the joint application performed a lesser role than Pomerantz Levy,[6] and mindful that fee awards must be " 'made with moderation and a jealous regard to the rights of those who are interested in the [settlement] fund,' " *Grinnell I, supra* at 469 (quoting *Trustees v. Greenough*, 105 U.S. 527, 536, 26 L.Ed. 1157 (1881)), the Court finds that a multiplier of 2 is reasonable, and awards $1,902,710 to the lawyers in the joint application for their legal fees.

---

5. The Securities and Exchange Commission began investigating Stirling Homex Corporation after the Company filed a petition in bankruptcy, which was on July 10, 1972. The findings of this investigation were furnished to plaintiffs' attorneys more than four years after the action was instituted.

6. Pomerantz Levy represented the class and Robert B. Block was the chairman of the committee of plaintiffs' counsel. Milberg Weiss Bershad & Specthrie were the only other lawyers in the joint application represented on this committee.

The lawyers in the joint application seek reimbursement of disbursements in the amount of $53,829.25. This figure is broken down as follows: Pomerantz Levy, $52,-636.25; Milberg Weiss Bershad & Specthrie, $901; and Richard D. Greenfield, $292. These applicants have attached to the joint application itemized lists of their disbursements, which include filing fees, duplicating costs, toll calls, deposition transcripts, postage, airfreight and messenger services, travel expenses and fees for deposition witnesses. Upon reviewing the joint application and the record herein, the Court will allow reimbursement of disbursements of the joint applicants in the following amounts: $50,000 for Pomerantz Levy, that being the amount stated in the notice sent to the class;[7] $901 for Milberg Weiss Bershad & Specthrie; and $292 for Richard D. Greenfield.

*Application of Finley, Kumble, Wagner, Heine & Underberg*

■ The application of Finley, Kumble, Wagner, Heine & Underberg ("Finley, Kumble") includes an affidavit sworn to on August 31, 1979 by Jeffrey A. Fillman ("affidavit of Jeffrey A. Fillman") and is made on behalf of Finley, Kumble, Mr. Fillman's law firm since March 1973; Eaton VanWinkle & Greenspoon, Mr. Fillman's law firm from the inception of this action until March 1973; and Lovitt & Hannan, the San Francisco law firm retained by the plaintiff in the *Aguirre* action. Lovitt & Hannan referred the *Aguirre* action to Mr. Fillman in November 1972, when it became apparent that Aguirre's claims were typical of those of other investors. Mr. Fillman was a member of the committee of plaintiffs' counsel formed on March 12, 1974 to coordinate pretrial discovery. The activities performed by, and the normal billing rates of, the lawyers of Finley, Kumble; Eaton Van-Winkle & Greenspoon and Lovitt & Hannan are set forth in detail in the affidavit of Jeffrey A. Fillman, which states that these lawyers spent 1,377 hours on these actions, including 55 hours preparing the fee appli-

cation. These 55 hours are not compensable, since an attorney may not be compensated for efforts to obtain a fee. *Grinnell II, supra* at 1102. Upon reviewing the affidavit of Jeffrey A. Fillman and the record herein, the Court finds that, with the exception of the 55 hours spent preparing the fee application, the services rendered by Finley, Kumble; Eaton VanWinkle & Greenspoon; and Lovitt & Hannan, which include motions, discovery and conferences, were necessary to the furtherance of the class action. Accordingly, the base fee of $136,780 sought in the application of Finley, Kumble is reduced to $128,530, after deducting the amount that would be charged based on the normal billing rates for preparing the fee application.

■ The fee of $210,000 sought by Finley, Kumble is approximately 1.63 times the base fee. Having considered the *Grinnell* factors set forth above and the fact that some of the lawyers in the application of Finley, Kumble performed a lesser role than Mr. Fillman,[8] and mindful that fee awards must be moderate, the Court finds that a multiplier of 1.5 is reasonable, and awards $192,795 to the lawyers in the application of Finley, Kumble for legal fees.

Finley, Kumble seeks reimbursement of disbursements in the amount of $15,882.70. The affidavit of Jeffrey A. Fillman includes an itemized list of disbursements, which include duplicating costs, toll calls, deposition costs, postage, messenger services, travel expenses and overtime payments. Upon reviewing the affidavit of Jeffrey A. Fillman and the record herein, the Court will allow reimbursement of disbursements of Finley, Kumble in the amount of $15,-882.70.

### ACCOUNTANT FEES

■ Eric J. Klinger, accountant for class plaintiffs, also rendered his services on a contingent basis. The activities performed by Mr. Klinger are described in the

---

7. *See* note 3 *supra.*

8. Jeffrey A. Fillman was the only lawyer in the application of Finley, Kumble who was a member of the committee of plaintiffs' counsel.

affidavit sworn to on August 29, 1979 by Eric J. Klinger, which is included in the joint application, and in the affidavit of Robert B. Block. The joint application states that Mr. Klinger spent 3,989 hours analyzing and evaluating complex accounting policies and procedures. Upon reviewing the joint application and the record herein, the Court finds that these services were necessary, since the claims against the settling defendants involved complex accounting issues. According to the affidavit of Robert B. Block, the fee that Mr. Klinger would charge for these services based on his normal or non-contingent billing rate is $300,000. The $450,000 fee sought by Mr. Klinger reflects such factors as the risks of litigation and the complexity of the accounting issues. In view of these factors and upon reviewing the joint application and the record herein, the Court finds that a multiplier of 1.5 is reasonable, and awards $450,000 to Mr. Klinger for his accounting fees.

## CONCLUSION

Therefore, the fees and disbursements for plaintiffs' attorneys and accountant are allowed as follows: