**Emerich RESSLER, on Behalf of Himself and All Others Similarly Situated, Plaintiff,**

v.

**Richard E. JACOBSON, Martin G. Jacobson, Marc S. Geller, and Nutmeg Industries, Inc., Defendants.**

**Civ. A. No. 90–406–CIV. T–21A.**

United States District Court, M.D. Florida, Tampa Division.

Dec. 10, 1992.

**1552**

Leonard Barrack, Gerald J. Rodos, Samuel R. Simon, Barrack, Rodos & Bacine, Philadelphia, PA, John R. Bush, Bush Ross Gardner Warren & Rudy, P.A., Tampa, FL, for plaintiff.

John R. Kiefner, Jr., Riden, Earle & Kiefner, P.A., St. Petersburg, FL, for defendants.

## MEMORANDUM OPINION

NIMMONS, District Judge.

## I. INTRODUCTION

This is an open market securities fraud class action arising under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. § 240.-10b–5, brought on behalf of all purchasers of the common stock of Nutmeg Industries, Inc. from May 23, 1989 to March 7, 1990. On October 9, 1992, the Court conducted a hearing in open court in this action with respect to whether the proposed Settlement of the action as contained in the Stipulation of Settlement dated July 13, 1992, should be approved. The Stipulation of Settlement contemplates the payment by defendants of a gross Settlement Fund of $775,000, consisting of $750,000 in cash which has been earning interest since July 30, 1992, and $25,000 for costs of providing notice to class members of the proposed settlement.

On July 29, 1992, after a hearing in open court, the Court entered an order granting plaintiff's motion for preliminary approval of the settlement ("Hearing Order"). Pursuant to the schedule included in the Hearing Order, plaintiff's counsel has caused the approved form of notice to be mailed to more than 3,900 persons or entities who purchased the common stock of defendant Nutmeg Industries, Inc. during the Class Period. In addition, notice using 8–point type was published nationwide in the August 20, 1992, edition of *The Wall Street Journal*. No individual or entity has objected to the proposed settlement.

## II. DISCUSSION

It is "the policy of the law generally to encourage settlements." *Florida Trailer and Equipment Co. v. Deal*, 284 F.2d 567, 571 (5th Cir.1960). The Court of Appeals for the Fifth Circuit has explained that, "[p]articularly in class action suits, there is an overriding public interest in favor of settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir.1977). The district courts are afforded broad discretion in determining whether to approve a proposed class action settlement, and in doing so give considerable weight to the views of experienced counsel as to the merits of the settlement. *Cotton v. Hinton*, 559 F.2d at 1330–32. As settlements are construed upon compromise, the merits of the parties' claims and defenses are delib-

erately left undecided. Judicial evaluation of a proposed settlement of a class action thus involves a limited inquiry into whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of the settlement. *See Mashburn v. Nat'l Healthcare, Inc.,* 684 F.Supp. 660 (M.D.Ala.1988).

■ Due to the nature of class actions by which the claims and rights of numerous faceless class members are adjudicated, usually without personal legal representation, it is the province of the Court as a fiduciary to the class to evaluate the fairness of the settlement. Courts generally weigh and analyze several factors, which have been stated in various terms by different courts, to determine whether the proposed settlement is fair and equitable under the circumstances. Six factors have generally been enumerated for consideration:

(1) The existence of fraud or collusion behind the settlement;

(2) The complexity, expense, and likely duration of the litigation;

(3) The stage of the proceedings and the amount of discovery completed;

(4) The probability of plaintiffs' success on the merits;

(5) The range of possible recovery; and

(6) The opinions of class counsel and absent class members.

*Reed v. General Motors Corp.,* 703 F.2d 170, 172 (5th Cir.1983). *See also, In re Corrugated Container Antitrust Litigation,* 643 F.2d 195, 217 (5th Cir.1981).

## A. The Absence Of Fraud Or Collusion Behind The Settlement

The settlement in this case was reached only after months of arms-length bargaining. Plaintiff's counsel have represented to this Court that they agreed to the proposed settlement terms only because they felt such terms to be in the best interest of the entire Class. There has been no suggestion from any quarter that this settlement resulted from fraud or collusion. Accordingly, this Court is of the opinion that this factor weighs in favor of approval of the settlement.

## B. The Complexity, Expense, and Likely Duration Of The Litigation

This Court is well aware of the complexity of this litigation. The case is premised upon alleged violations of federal securities law—a very difficult area of practice.

The issues involved in this action were complex. Indeed, there is no question but that the factual issues to be tried would have been difficult for a jury to fully understand, and would unquestionably have required the presentation of substantial expert testimony. The issues involved in this litigation concerned virtually every aspect of the business—including the data processing and computer systems—of a manufacturer of "themed" sportswear. Plaintiff charged that defendants failed to reveal, or misrepresented to the public, the true condition of Nutmeg's business and operations during the 9½–month Class Period, including allegations that the Company had failed to disclose or misrepresented serious, on-going problems that it had encountered in its manufacturing operations, order backlog and inventory situation, order tracking and shipping departments, sales controls, and data processing operations.

The trial of this action would require a thorough analysis of the intricacies of the manufacturing processes that occur at Nutmeg's production facilities, as well as an in-depth examination of the role that Nutmeg's present and former management information systems and computer systems play in its various operations. The factual issues involved in the data processing and management information system aspects of this action are complex, and the trial would have been quite complicated for a jury to understand. The result, at best, would be a morass of evidence and a battle of experts.

To prevail on his claims under § 10(b) and Rule 10b–5, plaintiff must first establish that there were misstatements in, or omissions from, public statements made by defendants during the class period, and that the matters misrepresented or omitted were material. *Basic, Inc. v. Levinson,* 485 U.S. 224, 231–32, 108 S.Ct. 978, 983–84, 99 L.Ed.2d 194 (1988); *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757

(1976). Under § 10(b), plaintiff bears the additional burden of establishing that the material misstatements were made with *scienter* (actual knowledge of or reckless disregard for the truth). *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n. 12, 96 S.Ct. 1375, 1381 n. 12, 47 L.Ed.2d 668 (1976). This burden of proof is particularly difficult to meet in cases such as this.

At trial, defendants would no doubt attempt to convince the jury that their pronouncements during the class period were fully supported by the internal manufacturing and sales data generated by Nutmeg, and that disclosures that they made about changing conditions at the Company's facilities were timely, accurate, and adequate to apprise investors of the true state of the Company's business and operations. Defendants would also argue that plaintiff's claims amounted to nothing more than allegations that defendants had engaged in mismanagement of Nutmeg's business, which is not actionable under the anti-fraud provisions of the federal securities laws. *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977).

Further, to prevail on his claims, plaintiff would have to prove that the alleged misrepresentations and nondisclosures were material to the investment decisions of the members of the class. The outcome on the issue of materiality is far from certain. Disconcertingly for plaintiff's contentions, on March 6, 1990, when Nutmeg released its poor fourth quarter results, its stock price actually *rose* by $0.50, and over the seven-day period March 1–8, 1990, Nutmeg's stock price rose by some 33%—from $4.50 to $6.00. Related to the issue of materiality is the issue of causation. In this case plaintiff would have to overcome defendants' argument that other economic factors precipitated the price decline in Nutmeg's stock, which factors acted as an intervening or superseding cause and therefore relieved defendants from responsibility for any losses suffered by plaintiff and the members of the class.

The "demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement." *City of Detroit v. Grinnell Corp.*, 356 F.Supp. 1380, 1389 (S.D.N.Y.1972). In light of all issues of liability, it is clear that trial of this case would have been quite lengthy and complex and that the proposed settlement is a very desirable one.

The issue of damages is also complex. The traditional measure of damages in a § 10(b) case is, of course, the investor's "out-of-pocket" loss. *Randall v. Loftsgaarden*, 478 U.S. 647, 661–62, 106 S.Ct. 3143, 3151–52, 92 L.Ed.2d 525 (1986). Under this measure, a defrauded buyer may recover the difference between the price paid for the stock and the "fair value" of that stock (*i.e.,* value absent the fraud) as of the date of his or her purchase. *See Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 576–78 (2nd Cir.1982); *see generally* A. Jacobs, "The Measure of Damages in Rule 10b–5 Cases," 65 Geo.L.J. 1093, 1099–1102 (1977). Because "fair value" of a stock will presumably differ from its public market price (the latter being inflated by the fraud), expert testimony is necessary in order to fix the amount—and indeed the existence—of actual damages. *See, e.g., Burger v. CPC Internat'l, Inc.*, 76 F.R.D. 183, 187–88 (S.D.N.Y.1977).

Had this action proceeded to trial, plaintiff would have presented expert testimony to the effect that the decline in the market price of Nutmeg securities in the days following the Company's October 1989 and January 1990 public announcements was directly attributable to the Company's disclosure of information that plaintiff contends was concealed from and/or misrepresented to the market during the class period. Defendants' expert would present far different conclusions about "fair value" than would plaintiff's expert and contend that no damages were suffered by class members. In the "battle of experts," it is impossible to predict with any certainty which arguments would find favor with the jury. Settlement of this litigation effectively eliminates the substantial risks the damage questions pose.

## C. The Stage Of The Proceedings And The Amount Of Discovery Completed

In this case, it is this Court's opinion that the plaintiffs have conducted sufficient discovery to be able to determine the probability of their success on the merits, the possible

range of recovery, and the likely expense and duration of the litigation. The law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations. *See In re Corrugated Container, supra,* 643 F.2d at 211; *Cotton v. Hinton, supra,* 559 F.2d at 1332.

In a case such as this, based in large part on allegations of misrepresentations or omissions of material fact in disclosure documents, and deliberate fraud, document discovery may be as important as the taking of depositions. Plaintiff's counsel have conducted extensive discovery in this action. Thousands of documents were analyzed and key witnesses were deposed at length. The litigation had therefore reached the stage where "[d]iscovery is fairly advanced and the parties certainly have a clear view of the strengths and weaknesses of their cases." *In re Warner Communications Securities Litigation,* 618 F.Supp. 735, 745 (S.D.N.Y. 1985). Accordingly, this Court is of the opinion that this factor weighs in favor of approval of the settlement.

### D. The Probability Of Plaintiff's Success On The Merits; and

### E. The Range Of Possible Recovery

A Court is to consider the likelihood of the plaintiff's success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise. In order to calculate the "best possible" recovery, one must assume complete success on both liability and damages as to all class members over the entire class period. *See Cotton v. Hinton, supra,* 559 F.2d at 1330. Experienced counsel for both plaintiff and defendants, negotiating at arms-length and possessing all relevant information, have recommended the present settlement to the Court because each side realizes the risks of failure and the high costs attendant to continued litigation. When the potential legal difficulties of plaintiff's case— including the possibility of an adverse ruling by this Court on either plaintiff's class motion (which under *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978), is unappealable) or defendants' dismissal motion (which would end the case unless reversed on appeal)—are added to the unpredictability of a lengthy and complex jury trial, the benefits to the class of the present settlement become all the more apparent.

Litigation risk, moreover, does not end with the trial. In numerous instances jury verdicts are overturned by the trial court, the Court of Appeals, or even the Supreme Court. Further litigation would be costly as well. The present settlement must be balanced against the expense of achieving a more favorable result at trial. *Young v. Katz,* 447 F.2d 431, 433 (5th Cir.1971).

This case is obviously a complex one which has been and, except for this settlement, would continue to be stoutly contested by all parties. Defendants are represented by a law firm which is among the most well respected in Florida. Plaintiff's lead counsel is nationally regarded in the field. Expert testimony on both sides would unquestionably be necessary. Experienced counsel, whom the Court finds operated at arms-length at all times, have weighed these and all other factors and have endorsed the proposed compromise. As the Fifth Circuit has explained in the class action context, "the trial court is entitled to rely upon the judgment of experienced counsel for the parties. . . . Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton v. Hinton, supra,* 559 F.2d at 1330.

Accordingly, the Court is of the opinion that these factors weigh in favor of approval of the settlement.

### F. The Opinions Of Class Counsel And Absent Class Members

As discussed in detail above, plaintiff's counsel concluded that there are hotly contested and complex issues of fact and law involved in this lawsuit. The determination of those issues at trial would most likely rest on the persuasiveness of expert witnesses, and the credibility of the adverse witnesses whom plaintiff would call in his case in chief. Short of an actual trial, it is extremely difficult to predict with confidence which side would prevail.

The Court has also carefully considered the benefits accruing to the members of the Class from the settlement. If the settlement is approved, the Settlement Fund will amount to $750,000 in cash, which has been accruing interest since July 30, 1992, and $25,000 for payment of costs of Notice, for a total of $775,000 plus accruing interest.

In light of the substantial benefits that will be realized by the members of the class as a result of this settlement, plaintiff's counsel have expressed the firm opinion that the settlement is eminently fair, reasonable, and proper, in the best interests of all of the members of the class whom they represent, and worthy of the approval of this Court. Accordingly, the Court is of the opinion that this factor weighs in favor of approval of the proposed settlement.

The time for filing objections to the settlement expired on September 21, 1992. As of that date not one objection to the settlement had been filed. The fact that there are no objections to the settlement is excellent evidence of the settlement's fairness and adequacy. *See e.g., Fisher Bros., Inc. v. Mueller Bros Co.,* 630 F.Supp. 493, 498 (E.D.Pa.1985). The Court, therefore, is of the opinion that this factor weighs in favor of approval of the proposed settlement.

### III. CONCLUSION

For the reasons heretofore stated in this memorandum opinion, it is the opinion of this Court that the interests of the class as a whole are best served if this litigation is resolved by the proposed settlement. The Court hereby finds that the settlement is fair, reasonable, and adequate.

A separate final judgment approving the settlement and dismissing this action with prejudice against defendants will be entered in accordance with this *memorandum opinion.*

**DONE** and **ORDERED.**