Oliver S. BROWN, et al., Plaintiffs,

v.

PHILLIPS PETROLEUM COMPANY, etc., et al., Defendants–Appellants,

Mobil Oil Corporation, et al., Defendants,

Ashland Oil, Inc., et al., Defendants–Appellees.

Nos. 85–1788, 85–1789, 85–1892 and 85–1912.

United States Court of Appeals, Tenth Circuit.

Feb. 3, 1988.

Rehearing Denied March 2, 1988.

Richard C. Hite and Steven D. Gough, (W.A. Kahrs of Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, Kan., and Charles T. Krol and Mary S. Haskins, Denver, Col., with them on the briefs), of Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, Kan., for defendant-appellant and cross-appellee, Amoco Production Co.

John A. Rayll, Jr. and Craig A. Coulter, of Coulter & Rayll, Tulsa, Okl., Stanford J. Smith, Jr. and Alan G. Metzger, of Robbins, Tinker, Smith & Metzger, Wichita, Kan., and Graydon D. Luthey, of Cities Service Oil and Gas Corp., Tulsa, Okl., on briefs, for defendant-appellant and cross-appellee, Cities Service Oil and Gas Corp.

Joseph W. Kennedy and Robert W. Coykendall, of Morris, Laing, Evans, Brock & Kennedy, Chartered, Wichita, Kan., and John L. Williford and Don L. Jemison, of Phillips Petroleum Co., Bartlesville, Okl., on the briefs, for defendant-appellant and cross-appellee, Phillips Petroleum Co.

Gerald Sawatzky (Robert C. Foulston and Jim H. Goering, of Foulston, Siefkin, Powers & Eberhardt, and Richard Jones, Jerome E. Jones, and Robert J. O'Connor, of Hershberger, Patterson, Jones & Roth, Wichita, Kan., with him on the briefs), of Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., for defendants-appellees, Ashland Oil, Inc., Atlantic Richfield Co., Cabot Petroleum Corp., Damson Oil Corp. (formerly Dorchester Gas Producing Co.), Helmerich & Payne, Inc., Texaco, Inc., Diamond Shamrock Corp., Mapo Production Co., Mobil Oil Corp., Superior Oil Co., Gulf Oil Co., Lessee Producer Class, and cross-appellant, Ashland Oil, Inc.

Before McKAY, TACHA, and BALDOCK, Circuit Judges.

TACHA, Circuit Judge.

This case arises out of a complex series of cases that has been in litigation since the early 1960s. The underlying cases involve generally the ownership and valuation of helium extracted by National Helium Corporation and sold to the federal government from 1963 to 1973. The only issues on appeal and cross-appeal in this case are (1) whether the trial court abused its discretion in awarding attorneys' fees on the basis of a percentage of a common fund, and (2) whether Ashland Oil is precluded from recovering a share of the common

fund because of a prior holding of this court. We affirm the court's award of attorneys' fees and hold that Ashland Oil is not precluded from recovering from the common fund. We remand for a determination of appropriate attorneys' fees in the cross-appeal.

The issues litigated in this series of cases related to right to payment for and valuation of helium extracted from natural gas from the Hugoton and Panhandle areas of Kansas, Oklahoma, and Texas. The parties in this appeal are members of the class of lessee producers who obtained judgment in 1983 establishing that they were entitled to a specified amount for the helium extracted by National Helium Corporation. *National Helium Corp. v. Panhandle Eastern*, No. KC–1980 (D.Kan. Nov. 3, 1983). After appeals were taken from that judgment, the parties settled the protracted controversy by agreeing to payment for the helium at a rate of $3.60 per thousand cubic feet plus interest. That settlement agreement requiring National Helium to pay approximately ninety-one million dollars was submitted to the court on October 16, 1984. The landowners' share of the settlement was approximately sixteen million dollars and the lessee producers' share was approximately seventy-five million dollars. Several law firms that represented various lessee producers and had represented the class of lessee producers through most or all of the class action litigation filed applications for attorneys' fees and expenses to be paid from the lessee producers' common fund recovery of seventy-five million dollars. These law firms (class counsel) represented appellees and cross-appellants in this case. The fee applications were accompanied by reconstructed time records and other documentation of time spent and work performed. The applications sought attorneys' fees in addition to payments the attorneys had received throughout the course of the litigation.

After appropriate notice to the producer class members and landowners, the trial court held hearings on a motion to approve the settlement agreement and on the applications for attorneys' fees and litigation expenses. Appellants in this case, three

lessee producers, opposed the fee applications. The district court approved the settlement agreement and awarded class counsel an amount equal to 16.5% of the lessee producers' seventy-five million dollar share of the common fund. Appellants challenge the court's decision to award attorneys' fees based on a percentage of the common fund. They claim that the award should have been based upon an analysis of the hours reasonably spent multiplied by a reasonable hourly rate.

I.

An award of attorneys' fees is a matter uniquely within the discretion of the trial judge who "has intimate knowledge of the efforts expended and the value of the services rendered." *United States v. Anglin & Stevenson*, 145 F.2d 622, 630 (10th Cir. 1944), *cert. denied*, 324 U.S. 844, 65 S.Ct. 678, 89 L.Ed. 1405 (1945). We view the award here in the context of approximately twenty-five years of litigation including several state and federal district court cases, at least six appeals to this circuit, massive discovery and evidentiary development, and several thousand docket entries. The total record of related cases in this matter is among the largest ever amassed in this circuit. Perhaps most significantly for the questions before us, the district court judge who determined the attorneys' fee award was involved in substantially all of this litigation. His experience with and knowledge about the course of the litigation compels appellate court deference to his determination in the absence of an abuse of discretion. *Lucero v. City of Trinidad*, 815 F.2d 1384, 1386 (10th Cir. 1987).

The fee the trial court establishes must be reasonable. In statutory fee cases "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). This formulation, generally known as the lodestar method, provides the starting point for appellate court review of statu-

tory fee awards to determine whether a trial court has abused its discretion. The trial court in this case expressly did not rely on a lodestar analysis of class counsel's fee application. Failure to rely, to some extent, on a reasonable lodestar analysis would in most statutory fee cases constitute an abuse of discretion. *Ramos v. Lamm,* 713 F.2d 546, 552–57 (10th Cir. 1983). Here we must first decide whether a fee award based on a percentage of a common fund, in a case not involving statutory fees, is *per se* unreasonable. If it is not, we must then determine whether the trial court in this case abused its discretion nonetheless.

■ The Supreme Court has, in our judgment, answered the first question presented here. In *Blum v. Stenson,* a statutory fee case, the Court stated: *"Unlike the calculation of attorney's fees under the 'common fund doctrine' where a reasonable fee is based on a percentage of the fund bestowed on the class,* a reasonable fee under § 1988 reflects the amount of attorney time reasonably expended on the litigation." 465 U.S. 886, 900, n. 16, 104 S.Ct. 1541, 1550, n. 16, 79 L.Ed.2d 891 (1984) (emphasis added). Not only does this language implicitly recognize basic differences in the rationale for calculating attorneys' fees in common fund cases, but the Court also explicitly described a percentage calculation as a "reasonable fee" in those cases. We hold, therefore, that the award of attorneys' fees on a percentage basis in a common fund case is not *per se* an abuse of discretion.

■ The award of attorneys' fees is based on substantially different underlying purposes in a common fund case than in a statutory fees case. The common fund doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980). Common fund fees derive in part from the common law premise that a trustee is entitled to reimbursement from the fund administered. *Trustees v. Gree-*

*nough,* 105 U.S. (15 Otto) 527, 532, 26 L.Ed. 1157 (1881). Fees in common fund cases are extracted from the predetermined damage recovery rather than obtained from the losing party. Thus, common fund fees are neither intrinsically punitive nor designed to further any statutory public policy. Conversely, statutory fees are intended to further a legislative purpose by punishing the nonprevailing party and encouraging private parties to enforce substantive statutory rights. *See* H. Newberg, *Attorney Fee Awards,* § 2.06 (2d ed. 1986); *see generally,* Report of the Third Circuit Task Force, *Court Awarded Attorney Fees,* 108 FRD 237 (1985). Thus, unlike statutory fees, which result in a *shifting* of the fee burden to the losing party, common fund fees result in a *sharing* of the fees among those benefited by the litigation. As the footnote in *Blum* recognizes, another important difference is that normally a large number of people or entities benefit from a common fund case while the number benefited is not "a consideration of significance in calculating in the award of statutory attorneys' fees." *Blum,* 465 U.S. at 900 n. 16, 104 S.Ct. at 1550 n. 160.

■ Notwithstanding these differences, the percentage reflected in a common fund award must be reasonable; and, as in the statutory fee cases, the district court must "articulate specific reasons for fee awards to give us an adequate basis," *Ramos,* 713 F.2d at 552, to review the reasonableness of the percentage and thus the reasonableness of the fee award. To determine reasonableness, federal courts have relied heavily on the factors articulated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), in calculating and reviewing attorneys' fees awards. *See e.g. Ramos,* 713 F.2d at 552. Because these factors measure the attorneys' contributions, they are also appropriate in setting and reviewing percentage fee awards in common fund cases. The *Johnson* factors are: (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other

employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee—this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717–19.

> The trial court in this case found
>
> that the amount represented by this percentage is reasonable and is required to adequately compensate such counsel for the legal services performed in this litigation for the following reasons: The extraordinary complexity and protracted nature of this helium litigation since July, 1963; the amount of time spent by each of counsel as reflected in the evidence, which evidence is accepted by the Court; the high quality of the service performed; the novelty of the issues; the number of adverse parties and the quality of opposing counsel; the vast number of hotly contested issues at all stages of this litigation; the number of cases, hearings, appeals and other proceedings conducted by counsel, the vast number of documents, exhibits, records and other materials required to be reviewed, analyzed; the vast amounts of legal research required on many novel substantive and procedural issues; the nature of the arrangements by such counsel for payment from clients of only minimal or subsistence fees pending conclusion of the cases and the highly contingent right of recovery from the interpleader fund in view of the debatable legal issues relating to liability and valu-

ation; the skill and tenacity of counsel in conducting settlement negotiations and in refusing to accept very substantial and appealing, but inadequate, settlement offers at an earlier time; the enormously beneficial result conferred thereby upon the members of the Class. Such legal services were performed without unnecessary duplication and in an efficient manner.[1]

There is ample evidence in the record to support each of the reasons relied upon by the trial judge. The court here clearly considered all of the relevant *Johnson* factors and applied them appropriately. The trial judge considered the time and work involved. The record contains documentation supporting the time claims. The court records in this litigation attest to the novelty and difficulty of the questions presented. This trial judge personally observed many of the relevant stages of this series of cases and thus was in a unique position to judge the skill requisite to perform the legal service properly as well as the experience, reputation, and ability of the attorneys. The court specifically relied on these factors in establishing the percentage. The record contains evidence that a substantial portion of the work of class counsel for many years was devoted to these cases, and thus precluded or reduced their opportunity for other employment. The "customary fee" factor in a common fund case is the same as the factor suggesting consideration of awards in similar cases. We note that a review of other federal common fund cases demonstrates that a 16.5% attorneys' fee award is clearly within the range of awards deemed reasonable by other courts in similar or less lengthy and less complex cases.[2]

---

1. In its final order the district court amended the portion of its proposed order that contained these findings. The court stated, however, that it intended only that its final order be "incorporated and integrated" with the affected part of the proposed order; there was no intent to supersede these findings and not only are they unaffected by the final order, but they clearly support it.

2. *See, e.g., In re New York City Municipal Securities Litigation,* [1984 Transfer Binder] Fed.Sec.L.

Rep. (CCH), Para 91,419 (S.D.N.Y.1984) (33%) [Available on WESTLAW, 1984 WL 2411]; *In re Warner Communications Securities Litigation,* 618 F.Supp. 735 (S.D.N.Y.1985), *aff'd,* 798 F.2d 35 (2d Cir.1986) (24.5%); *Murphy v. Presly Co.,* [1981 Transfer Binder] Fed.Sec.L.Rep. (CCH), Para. 97,975 (C.D.Cal.1981) (22.7%); *Van Gemert v. Boeing Co.,* 516 F.Supp. 412 (S.D.N.Y. 1981) (37.3%); *Bullock v. Kircher,* 84 F.R.D. 1 (D.N.J.1979) (25.2%); *Jezarian v. Csapo,* 483 F.Supp. 385 (S.D.N.Y.1979) (23.7%); *Valente v. Pepsico, Inc.,* [1979 Transfer Binder] Fed.Sec.L.

The facts underlying both the "time limitations" factor and the "length of the professional relationship with the client" factor are evident from the remarkable length of class counsel's representation and the litigation itself. Finally, as we have observed, a decisive factor in this common fund class action case is the amount involved and the results obtained. In evaluating this factor the trial judge appropriately balanced the interests of the beneficiaries in light of the efforts of counsel on their behalf.

■ Although the *Johnson* factors are relevant in determining a reasonable fee in a common fund case, the inherent differences between statutory fee and common fund cases could justify a trial judge's decision to assign different relative weights to those factors in the two types of cases. For example, the first factor—time and labor required—is an essential touchstone for recovery in a statutory fee case where reasonableness is measured in part by reference to the lodestar analysis. In a common fund case, however, although time and labor required are appropriate considerations, the ninth *Johnson* factor—the amount involved and the results obtained—may be given greater weight when, as in this case, the trial judge determines that the recovery was highly contingent and that the efforts of counsel were instrumental in realizing recovery on behalf of the class. We recognized in *Ramos*, 713 F.2d at 552, that rarely are all of the *Johnson* factors applicable; this is particularly so in a common fund situation. We hold here only that in awarding attorneys' fees in a common fund case, the "time and labor involved" factor need not be evaluated using the lodestar formulation when, in the judgment of the trial court, a reasonable fee is derived by giving greater weight to

other factors, the basis of which is clearly reflected in the record.[3]

■ We are mindful of the subjective nature of the determination a trial judge must make when an award is not anchored in the seemingly more objective lodestar formula. The trial judge in a common fund case must "act as a fiduciary for the beneficiaries" of the fund. Report of the Third Circuit Task Force, *Court Awarded Attorney Fees,* 108 F.R.D. 237, 251 (1985). Attorneys' fees necessarily reduce the amount that the common fund beneficiaries recover. Instead of serving as an arbiter in an adversarial setting, as is the case in a statutory fee controversy, the trial judge must determine a reasonable fee by weighing the appropriate interests of the beneficiaries in light of the efforts of counsel on their behalf. The need for meaningful appellate review in these cases requires the trial court to articulate clearly the factors and supporting evidence that it relies upon. The trial judge in this case met this requirement. We find no abuse of discretion in the award of an amount equal to 16.5% of the common fund where the relevant *Johnson* factors were considered and the court's determination is supported by evidence in the record.

## II.

■ One of the cases not tried by this trial judge and the subject of the cross-appeal was *Ashland Oil, Inc. v. Phillips Petroleum Co.,* 364 F.Supp. 6 (N.D.Okla. 1973), which was filed in the Northern District of Oklahoma and resulted in this court's en banc decision approving the workback valuation method for valuing the helium. *Ashland Oil Inc. v. Phillips Petroleum Co.,* 554 F.2d 381 (10th Cir.1975) (en banc), *cert. denied,* 434 U.S. 921, 98 S.Ct. 396, 54 L.Ed.2d 278 (1977). This

Rep. (CCH), Para. 96,921 (D.Del.1979) (27%) [Available on WESTLAW, 1979 WL 1229]; and *Rothfarb v. Hambrecht,* 649 F.Supp. 183 (N.D. Cal.1986) (22%).

**3.** Even though the "time and labor involved" factor does not necessarily anchor the determination of reasonable fees in the common fund situation, it is a relevant factor and the avail-

ability of contemporaneous time records enhances the trial court's ability to properly evaluate it. The attorneys in this case did not consistently maintain contemporaneous time records. In part this failure must be attributed to the fact that such records were neither generally kept nor required during part of the period this litigation was pending.

method was then employed in the remainder of the cases that were tried in the district court in Kansas.

Cross–Appellant, Ashland Oil Co. (Ashland), seeks reversal of the district court's determination that Ashland is foreclosed from seeking an award of fees and expenses because of this court's holding in *Ashland I.* That case, however, was in a different posture than the case on appeal here. We denied an award of attorneys' fees in 1975 because we construed the litigation at that time as "plain and simple commercial litigation" involving two competing parties—one of whom would recover against the other. *Ashland,* 554 F.2d at 392 (quoting *F.D. Rich Co. v. Industrial Lumber Co.,* 417 U.S. 116, 130, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974)). The posture of the case now is quite different: Ashland is one of several beneficiaries of a common fund. The amount of recovery against the liable parties is fixed.

Our analysis here of the purposes of attorneys' fee awards in common fund cases as a form of fee sharing rather than fee shifting, demonstrates that a common fund case is quite different from simple commercial litigation where one party recovers from another and attorneys' fees are generally not recoverable. Here Ashland is not attempting to recover attorneys' fees from Phillips in an amount over and above the amount of liability—such an attempt *is* precluded by this court's *Ashland I* holding. Rather, Ashland is seeking attorneys' fees *out of an amount established* as the total award. Thus, the percentage of the common fund recovery that Ashland now seeks differs markedly from the fee request considered by this court in *Ashland I.* Therefore, we hold that our *Ashland I* holding does not preclude Ashland from receiving an award of attorneys' fees and costs in this case if, in the opinion of the trial court, such an award is justified and warranted. We therefore reverse the district court on the cross-appeal and remand for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.