CONSUMERS GAS & OIL, INC., a Colorado farm cooperative in liquidation, on behalf of itself and others similarly situated, Plaintiffs,

v.

FARMLAND INDUSTRIES, INC., a Kansas farm cooperative; James L. Rainey; G.C. Matthiesen; Harry D. Cleberg; J.D. Atwood; Tim R. Daugherty; Stephen P. Dees; G.E. Evans; R.W. Honse; Earl L. Knauss; H. Wayne Rice; and B.L. Sanders, Defendants.

Civ. A. No. 92–F–1394.

United States District Court, D. Colorado.

Nov. 29, 1993.

Kirk Rider, Yeulin V. Willett, Younge & Hockensmith, P.C., Grand Junction, CO, Richard G. Sander, Robert J. Potrykus, Jr., Popham, Haik, Schnobrich & Kaufman, Ltd., Denver, CO, Frank A. Taylor, Popham, Haik, Schnobrich & Kaufman, Minneapolis, MN, for plaintiffs.

G. Stephen Long, Daniel F. Wake, Coghill & Goodspeed P.C., Alvin D. Shapiro, Kansas City, MO, for defendants.

Vincent A. Zarlengo, C.P.A., Causey Demgen & Moore, Denver, CO, Claims Adm'r.

First Interstate Bank of Denver, N.A., Shawn Hinton, Denver, CO, Escrow Agent.

## ORDER AND JUDGMENT AWARDING ATTORNEYS FEES AND DISBURSEMENTS

SHERMAN G. FINESILVER, Chief Judge.

On June 30, 1993, the parties entered into a Stipulation of Settlement in the captioned matter, one week prior to the commencement of trial. Following the Court's preliminary approval of the settlement on August 5, 1993, the law firms of Popham, Haik, Schnobrich & Kaufman, Ltd. and Younge & Hockensmith, P.C. ("Class Counsel") filed a Joint Application Of Class Co–Counsel For An Award Of Attorneys Fees And Disbursements, And For An Incentive Payment To The Members Of The Class Plaintiffs' Steering Committee.

The Court is familiar with this matter, having reviewed the voluminous files generated by this litigation, considering the testimony presented at the August 5, 1993 hearing on preliminary approval of the settlement, and presiding at the November 23, 1993 hearing on final approval of the settlement. The evidence adduced during the November 23, 1993 hearing included Affidavits listed in Appendix A.

A brief description of the matter is in order.

Defendant Farmland Industries, Inc. ("Farmland") is a Kansas farm cooperative. The Defendants in this litigation include Farmland and certain present and former officers of Farmland. For purposes of brevity, Farmland and the Individual Defendants shall be referred to as the "Farmland Defendants."

The named Plaintiff, Consumers, is a local farm cooperative that was organized and exists under the laws of the State of Colorado. Consumers has been in liquidation since 1981. Consumers is a former active member of Farmland, and is now an inactive member of Farmland. As an inactive member, Con-

sumers holds equity in Farmland in the form of book entries called Capital Credits.

Consumers brought this suit on behalf of itself and other similarly situated cooperatives which were once active members of Farmland. On May 19, 1993, this Court entered an Order certifying a class as follows:

*Class.* Class shall mean:

All dissolved, liquidated or inactive cooperatives, who (A) were at one time active members of Farmland Industries, Inc. ("Farmland") and either (B) currently hold a vested interest in Farmland's unpaid profits represented by book entries called "Capital Credits" made by Farmland during the period from January 1, 1980 through January 4, 1993, or (C) who held a vested interest in such Capital Credits during the period from January 1, 1980 through January 4, 1993, and who have sold any or all of such Capital Credits, and who were damaged thereby.

The Class Plaintiffs are inactive cooperatives which, like Consumers, hold Capital Credits in Farmland. As holders of Capital Credits, Class Plaintiffs are owners of Farmland. Like Consumers, the Class Plaintiffs were once active members of Farmland which earned patronage refunds by doing business with Farmland. The patronage refunds earned by Class Plaintiffs were generally paid 20% in cash and 80% in Member Common Stock.

The American agricultural economy soured in the early 1980s. As a result of the depressed agricultural economy, many of Farmland's active members began to liquidate and go out of business. Consumers and the Class members are local cooperatives which were once active members of Farmland that have ceased doing business and are in liquidation.

At the time that an active member of Farmland—here the members of the Class—began to liquidate, Farmland required each liquidating member to convert its Member Common Stock to Capital Credits. The Class contends that Farmland required this conversion with the promise that Farmland would redeem the Capital Credits when it was financially able to do so. The Farmland Defendants have vigorously denied this assertion and contend that the Farmland Board has complete and unfettered discretion as to the timing of redemption.

Consumers asserts, both individually and as a representative of the Class, that the conduct of the Farmland Defendants in failing to redeem the Capital Credits and subsequent conduct of the Farmland Defendants violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder as well as certain provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO). Consumers has further alleged that the Farmland Defendants have breached their fiduciary duty under Kansas state law to the members of the Class by refusing to redeem Capital Credits under the terms of various corporate instruments, documents and practices of agricultural cooperatives. Consumers has also alleged that the Farmland Defendants have been unjustly enriched through the prolonged retention of the contributions to Farmland's capital made by the Class members which are represented by the Capital Credits. As a remedy for this alleged unjust enrichment, Consumers, on behalf of itself and the Class members, sought restitution to the Class of the amount of the alleged unjust enrichment.

Each of the Defendants filed an Answer denying all allegations of wrongdoing and denying any liability on the legal theories proposed by Consumers and the Class. The Farmland Defendants each asserted several affirmative defenses, including, *inter alia,* that the time has passed for filing claims, the claims were not supported by the facts, and Farmland's Board of Directors and its officers exercised reasonable business judgment in determining which equities should be redeemed during each year that Farmland earned a profit. The Farmland Defendants continue to vigorously defend this matter.

This Court has jurisdiction over the parties to and the subject matter of this action pursuant to: (i) 15 U.S.C. § 78a, *et seq.* (the Securities Exchange Act of 1934); (ii) 18 U.S.C. § 1964(a) (equity) and § 1964(d)

(Right to Sue Organizations Act); and (iii) 28 U.S.C. § 1332 (diversity of citizenship).

By Order dated November 24, 1993, the Court has approved the June 30, 1993 Stipulation of Settlement entered into by the parties.

## I. COSTS AND EXPENSES.

■ Class Counsel have advanced costs and incurred out-of-pocket expenses and disbursements of $724,444.13 in this matter, as reflected by itemized statements of disbursements previously submitted to the Court. These expenses and out-of-pocket disbursements total $669,270.34, as set forth In Appendix B.

Uncontradicted evidence has been submitted concerning the necessity of these expenditures and their reasonableness. No Class Member has objected to them. In fact, the Court has not received any objections to this settlement. The Court has been asked to specifically approve certain distinct expense items. The Court has examined the evidence concerning these expenses, and concludes that they are reasonable and should be paid from the common fund established for the benefit of the Class members. This is, of course, separate and apart from the award of attorneys' fees which is discussed subsequently in this Order.

Since these expenses were submitted on September 1, 1993, Class Counsel has incurred expenses totaling $55,173.79, as itemized in Appendix C. The Court also finds these expenses to be reasonable and directs that they be paid through the Common Fund.

The Court has considered and rejects approval of an incentive award to individual members of the Class Plaintiffs' Steering Committee consisting of eight persons, all Trustees of liquidating farm cooperatives in Colorado and Kansas. Reimbursement of expenses as noted below shall be paid to the members of the Steering Committee. The parties have spent personal funds in travelling long distances to attend hearings and settlement conferences:

| | |
|---|---|
| Jack Shea | $10,000 |
| Charles Klaseen | $ 1,000 |
| Ralph Sample | $ 1,000 |
| Larry Monger | $ 1,000 |
| William Straus | $ 1,000 |
| Don Allen | $ 1,000 |
| Kenneth Johnson | $ 1,000 |
| Terry Fuller | $ 1,000 |

Mr. Shea has also performed professional services that benefitted the class. The Court recognizes and appreciates the fact that the Plaintiffs themselves actually participated in this litigation.

■ A number of the Class Members advanced funds against the costs of litigation, in the amount of $67,312.43. Some individual members of their local cooperatives advanced personal funds. These advances were made with the knowledge that the money could never be recovered if the litigation were not successful, and they were made for the benefit of the entire Class. Those Class Members making these advances did so partly on the strength of Class Co-counsel's promise to seek an award of interest at 18% per annum as a part of the cost award if the litigation were successful. The Court finds that an award of interest at 18% per annum on the funds advanced by Class Members for the benefit of the entire Class is warranted, particularly given the risk involved in the litigation. Interest on advanced amounts from the time of their advance until December 5, 1993, would amount to $15,213.08, and such an award is reasonable and approved.

Class Counsel have asked that interest be awarded on amounts advanced by them out-of-pocket from the time those funds were advanced until December 5, 1993. Class Counsel have asked that this interest be calculated and paid at the rate of six percent per annum, which would result in a cost award of $18,126.70 for interest on advanced funds. The Court finds that such an award is reasonable and such an award is APPROVED. No further interest awards will be made as to costs and disbursements not fully reimbursed by the December 1, 1993 payment.

At the Court's earlier direction, Class Counsel has investigated the costs of the Escrow Agent and Claims Administrator Vincent Zarlengo as required to make the

calculations and distribution required by the Settlement Agreement. The best quotation received for escrow services was $6,000 over the term of the Settlement distribution process, and the claims administrator has estimated fees of $6,500. These amounts are approved for inclusion in the cost award made hereby. All distributions to Class Members shall be calculated and made in such a way as to ensure that each Class Member bears a ratable portion of the costs and expenses of the litigation approved hereby.

## II. *FEE APPLICATION OF CLASS COUNSEL.*

Class Counsel have requested an attorneys fee award equal to 27% of all amounts paid by Farmland to Class Members (the "Common Fund") as result of the litigation.

The efforts of Class Counsel have produced a recovery to be shared by the entire Class. This recovery is the source from which attorneys' fees and expenses will be paid. This is a classic example of a "Common Fund" case.

In *Blum v. Stenson,* 465 U.S. 886, 900, n. 16, 104 S.Ct. 1541, 1550, n. 16, 79 L.Ed.2d 891 (1984) the Supreme Court made clear that the percentage method of commuting fees was the proper approach in Common Fund cases. There is ample precedent in this Court to grant percentage awards in a case such as this one. *See, e.g., In re Storage Technology Secs. Litig.* [1990–91 Transfer Binder], Federal Securities Law Reporter (CCH) ¶ 95,688, 1990 WL 260594 (D.Colo. 1990); *In re King Resources Co. Secs. Litig.,* 420 F.Supp. 610 (D.Colo.1976); *Oppenlander v. Standard Oil Co.,* 64 F.R.D. 597 (D.Colo. 1974).

■ In cases such as this, "the percentage approach in the 'Common Fund' is appropriate." *In re Storage Technology* [1990–91 Transfer Binder], Federal Securities Law Reporter, CCH ¶ 95,688 at 98,233, 1990 WL 260594. The practice of compensating class counsel in Common Fund cases on a percentage of the recovery basis makes sense. It is consistent with practices in the private marketplace; when an attorneys' fees is entirely contingent upon the recovery achieved, a percentage fee is customary if not universal. A Common Fund fee award in this matter would also be consistent with the Fee Agreement entered into between Class Counsel and several local cooperatives in Colorado and Kansas. The practice provides plaintiff's counsel with a strong incentive to effectuate the maximum possible recovery with the greatest efficiency in the shortest amount of time.

And, the Tenth Circuit Court in *Brown v. Phillips Petroleum Co.,* 838 F.2d 451, 454 (10th Cir.1988), *cert. denied,* 488 U.S. 822, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988) and at least four other Courts of Appeal—the District of Columbia and the Seventh, Ninth, and Eleventh Circuits—have now explicitly endorsed an award of attorneys' fees on a percentage basis in common fund cases. Specifically citing *Blum v. Stenson, supra,* the District Court for the District of Columbia approved the use of a percentage method to award fees in the common fund case of *Bebchick v. Washington Metropolitan Area Transit Comm'n* 805 F.2d 396 (D.C.Cir. 1986):

> Where the fees, as here, will come out of a "common fund," "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson,* 465 U.S. at 900 n. 16, 104 S.Ct. at 1549 n. 16. The "common fund" doctrine is an accepted part of the common law tradition, neither requiring a statutory exception to the general American Rule against the award of fees nor governed by Congressional (or other legislative) limitations on the award of fees. It is significant that this "common fund" doctrine recognizes percentage awards and is not restricted purely to the lodestar method. *That this is a "common fund" case permits award of a fee based on a percentage of the recovery.*

*Id.,* 805 F.2d at 406–07 (emphasis added). *See also Camden I Condominium Ass'n. Inc. v. Dunkle,* 946 F.2d 768, 774 (11th Cir.1991); *In re Continental Illinois Secs. Litig.,* 962 F.2d 566, 572–73 (7th Cir.1992); *Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268 (9th Cir.1989).

■ Comment on determining the size of the Common Fund is necessary. Of some importance in this matter, is $833,178.92 paid by Farmland in the Fall of 1992 in partial redemption of Capital Credits held by certain Members of Subclass I(A).[1] Class Counsel contend that these amounts are a part of the Common Fund, and the Stipulation of Settlement provides that Class Counsel will request a fee based on this $833,178.92 payment and were received by the Class members as part of their efforts.

The Court FINDS that the Common Fund should include the $833,178.92 payment and ORDERS that Class Counsel are entitled to a percentage of the $833,178.92 for their efforts. Based upon the evidence submitted, the Court finds that the partial redemption of Capital Credits made in 1992 was a result of Class Counsel's efforts and is therefore an appropriate element of the Common Fund.

■ Preliminarily, the Court notes that Rule 23, Fed.R.Civ.P. does not explicitly authorize an award of attorneys' fees and that it has broad discretion in making such an award. The authority and discretion for fixing attorneys' fees in connection with the approval of settlements arise therefore, from the so-called equitable fund doctrine.

This Court has clearly set forth in previous published opinions the factors that it shall consider in determining an award of attorney fees in cases such as this:

Unlike determining the value of services rendered in other specialties and professions, the value of legal services is within the Court's own knowledge. As an attorney, the Court brings its own experience to the question of a fair evaluation of services rendered against the total backdrop of the circumstances of a particular litigation.

With these thoughts in mind, we have considered the following criteria in the allowance and award of attorney fees:

Benefits Conferred Upon the Members of the Class—Results Achieved;

Time and effort Expended by Counsel in the Litigation;

Advance Fee Arrangements, If Any, Between Counsel and Members of the Class;

Point in Time During the Litigation When Settlement Was Achieved—Proximity to Trial;

Magnitude, Complexity and Novelty of the Litigation—Legal Questions Presented and the State of the Law;

Assistance, If Any, From Governmental Agency or Other Related Proceedings;

Court's Knowledge of the Nature, Extent and Quality of Services Rendered by Counsel;

Considerations of Public Policy;

Responsibility Undertaken by Class Counsel—Risks Involved and Inherent Preclusions of Other Employment;

Awards in Similar Cases;

Nature and Extent of Objections, if any, to Allowance of Attorney Fees.

*In re King Resources Co. Sec. Lit.,* 420 F.Supp. 610 at 628–629 (D.Colo.1976). In this case, the Court weighed all of these factors in arriving at an appropriate Common Fund percentage fee award.

The results achieved for the Plaintiff Class were highly favorable to class members with a redemption of all Capital Credits at issue in this litigation at one hundred percent of face value in less than three years from the settlement, with ninety percent of all funds paid within two years. That the settlement itself was achieved within one year of the commencement of the suit is itself a benefit to the Class Members. Mr. Jack Shea, one of the trustees for Consumers, succinctly testified that it was his judgment that this redemption of the Capital Credits was achieved through the efforts of Class Counsel. The lack of any objection to the settlement also confirms that a good result has been achieved for the Class.

We have also examined the time records which Class Counsel have submitted under seal. Our independent examination of these

---

1. The Court notes that the actual redemption was approximately $1.4 million. Class Counsel advised the Court that $833,178.92 was paid to current Class members; the remainder was not.

It is for this reason that Class Counsel's fee shall be, in part, calculated on $833,178.92, not $1.4 million.

records leads us to conclude that Class Counsel efficiently prosecuted this action. It is the Court's position that counsel should always endeavor to litigate in a cost effective manner, which Class Counsel has done.

In this case, Class Counsel had written contingent fee agreements with various members of the Class which called for a contingent fee award of 33⅓%. The evidence was that these agreements were negotiated at arm's length and that Class members often had counsel negotiate them with Class Counsel. The Court is not bound by such agreements in determining what is a reasonable fee.

█ The Court has also examined the complexity and novelty of the factual and legal issues presented in this litigation. Counsel have asserted that no reported cases have been found concerning the rights of local cooperatives to payment of their equity in a large federated cooperative, or the application of federal securities laws to the equities of a federated cooperative. The law of cooperatives generally is a narrow subspecialty formed by tax law and "cooperative principles" expressed far more eloquently in treatises than in governing statutes. Nevertheless, it was these cooperative principles that were the foundation of Plaintiffs' case, a case that was required to be structured in theories of cooperative, corporate, securities, RICO, and restitution law.

The Court also observes that governmental agencies often participate in complex securities litigation. Governmental agencies did not intervene or participate in this action.

This Court has taken an active role in the management of this case. It has supervised discovery matters personally and at times utilized the services of Chief Magistrate Judge Abram. It employed a Special Master—Donald Kelley—for settlement purposes. Chief Magistrate Judge Abram also contributed to the dynamics of settlement. Pleadings, motions, and responses have been extensive, requiring considerable research. In-depth discovery was required. Thousands of documents were produced and numerous depositions taken. The settlement agreement itself is highly complex.

In addition to extended discovery, pre-trial briefing, and dispositive motions, Class Counsel have represented that they consulted with independent experts to prepare for trial and evaluate trial strategy.

The Court has considered testimony from Lawrence Theis, Esq., an experienced Denver trial lawyer active in the prosecution and defense of complex securities and antitrust litigation. In Mr. Theis' opinion, the settlement represented a "superb result for the Class," and reflected superior lawyering. Mr. Theis further stated that his own firm, which conducts an extensive contingent fee practice, would not have undertaken this matter without an agreement for a 35% contingent fee, plus the additional payment of all out-of-pocket costs.

We note that the instant litigation was intense, hard-fought, and complex, and was marked throughout by high risk. The expert witness and lay witnesses accorded significant praise to the diligence and competence with which all counsel had conducted the litigation. The witnesses, without exception, endorsed the application for an award of costs and attorney fees as justified and reasonable in the amount requested.

We also have given consideration to the fact that the services performed in this case were performed under very great and continuing pressures of time by Plaintiffs' counsel. Pressures of time and travel involved not only personal inconvenience, but made it difficult for the attorneys to maintain normal client relationships with regular clients. Indeed, this case monopolized their professional time for over a period of months. Time limitations imposed by virtue of this litigation were tremendous.

The Court observes that no objections to the Fee Application have been submitted, and that affidavits from Steering Committee members and their counsel have specifically endorsed the requested fee. The Court does not attach a great deal of weight to the lack of objection; this merely increases the responsibility of the Court to determine a fair fee in the absence of any adversarial process. However, the judgments of the clients themselves, and of their local counsel, are entitled

to substantial weight, especially when those judgments are reached after the settlement.

The Court has taken into consideration all other matters in regards to determining the percentage of attorneys' fees to award. We note that, depending on the circumstances of the case, the accepted range of attorneys' fees have been between twenty to thirty percent of the benefit to the class. *King Resources*, 420 F.Supp. at 637. Plaintiff's counsel contend that a normal and customary fee in a complex contingent fee case such as this one would be approximately 33⅓%. The Court is not unmindful that higher fee awards have been granted in other cases. However, the Court finds that the reasonable amount of attorneys' fees is 24%, rather than the 27% requested by counsel.

A Common Fund fee award of 24% is APPROVED as to all Settlement amounts, including the 1992 redemption payment of $833,178.92 found to be part of the Common Fund Settlement. As to those members of Subclass I(A) that received partial redemption proceeds in 1992, the fee earned in respect of such receipts shall be calculated and withheld from payments yet to be made to them under the Settlement so that each Class Member pays a fee equal to 24% of that Member's own recovery, including amounts, if any, received in 1992.

Class Counsel has brought to the Court's attention certain payments they seek approval to make from their own fee award. Ordinarily, counsel are free to spend their own funds without court supervision; however, in the class action environment, such disclosures serve the interests of the Class and are appropriate. Class Counsel believe that Jack Shea is entitled to compensation in the amount of $10,000 for his critical advisory and professional role in this litigation. Class Counsel have advised the Court they intend to pay Mr. Shea $5,000 of this amount from the fee award.

Class Counsel have disclosed to the Court their agreement to pay $1,631 to Joseph C. French, Esq., an attorney originally engaged by a Class Member in Kansas to provide general oversight of the litigation and local liaison on their behalf. Mr. French attended portions of the proceedings and conferred with Class Counsel on several occasions. Neither Class Counsel nor Mr. French have asserted that his services provided general benefits to the Class, but no payment from Class funds is being requested. The agreement between Class Counsel and Mr. French is merely an instance of comity between counsel; it is unobjectionable to the Court or the interests of the Class and is hereby APPROVED.

The award of attorney fees in the instant case is decided on the totality of the circumstances of the case and the uniqueness of the litigation and is not precedent for other awards of attorney fees in other class actions. The ruling is limited to the facts of this case.

This opinion contains and shall constitute the findings of fact and conclusions of law required by Rule 52, Federal Rules of Civil Procedure and final judgment is hereby entered pursuant to Rule 54(b), Fed.R.Civ.P.

## III. *ORDER.*

Accordingly, it is ORDERED that a common fee award of 24% as to all settlement amounts is APPROVED; further, that certain other fees, reimbursements for expenses, and interest payments are also APPROVED.

### APPENDIX A

| Exhibit No. | Description |
| --- | --- |
| 1 | Affidavit of Lawrence Theis |
| 2 | Affidavit of Joseph C. French |
| 3 | Affidavit of Frank Taylor |
| 4 | Affidavit of Kirk Rider |
| 5 | Affidavit of Michael Schottelkotte |
| 6 | Affidavit of Ted Fiflis |
| 7 | Affidavit of Leon Garoyan |
| 8 | Affidavit of John Gunter |

| Exhibit No. | Description |
|---|---|
| 9 | Affidavit of Daniel Fischel |
| 10 | Affidavit of Jeffery Boyll |
| 11 | Affidavit of Peter Mahoney |
| 12 | Contingent Fee Agreements |
| 13 | Stipulation of Settlement |
| 14 | Affidavit of Sheryl Noyes |
| 15 | Class Members' Advances and Interest Calculations through December 5, 1993 |
| 16 | Class Counsel's Advance and Interest Calculations through November 30, 1993 |
| 17 | Joint Application of Class Counsel for Award of Fees |
| Joint Exhibit A | Transcript, with Exhibits, of August 5, 1993 hearing |
| Joint Exhibit B | Affidavit of Jack Shea |
| Joint Exhibit C | Affidavit of Ralph Sample |

## APPENDIX B
### EXPENSES

| CATEGORY | AMOUNT |
|---|---|
| 1. Telecopies | $ 6,564.80 |
| 2. Long Distance Telephone/Cellular Phone | 7,634.21 |
| 3. Computer Assisted Research | 43,898.69 |
| 4. Secretarial Overtime | 11,241.76 |
| 5. Federal Express and Other Shipping | 9,169.27 |
| 6. Messenger Services | 1,085.30 |
| 7. Travel and Subsistence | 100,023.81 |
| 8. Postage | 1,623.55 |
| 9. Miscellaneous Supplies | 1,196.50 |
| 10. Filing Fees | 190.00 |
| 11. Process Servers | 1,074.40 |
| 12. Court Reporters/Transcripts/Video | 53,192.13 |
| 13. Expert Witness/Consultant Fees | 272,545.77 [2] |
| 14. Mediator's Fees | 2,458.42 [3] |
| 15. Paralegal Fees | 51.00 |
| 16. Photocopies | 98,272.34 |
| 17. Computer Litigation Support | 32,906.64 |
| 18. Witness Fees | 1,106.75 |
| 19. Jury Research/Video Presentation | 25,035.00 |
| TOTAL | $669,270.34 |

## APPENDIX C
### ADDITIONAL EXPENSES

| CATEGORY | AMOUNT |
|---|---|
| Telecopies | $ 485.50 |
| Long Distance Telephone/Cellular Phone | 1,045.94 |
| Computer Assisted Research | 2,124.50 |
| Secretarial Overtime | 2,944.20 |
| Federal Express and Other Shipping | 944.07 |
| Messenger Services | 417.65 |

2. Includes $138,916.94 of billings of expert witnesses and consultants which are specifically set forth in the Affidavits of Professor Ted J. Fiflis, Professor Daniel Fischel, Dr. Jeffery Boyll, Dr. Leon Garoyan and Mr. Peter Mahoney.

3. After deduction for $5,000 deposit refunded after submission.

| | |
|---|---|
| Travel and Subsistence | 18,161.61 |
| Postage | 487.94 |
| Miscellaneous | 127.90 |
| Process Servers | 26.00 |
| Court Reporters/Transcripts/Video | 1,062.82 |
| Expert Witness/Consultant Fees | 4,030.12 |
| Mediator's Fees | 1,252.50 |
| Photocopies | 10,879.13 |
| Computer Litigation Support | 3,932.85 |
| Jury Research/Litigation Support | 7,251.06 |
| TOTAL | $55,173.79 |