**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 10 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

In re: COPLEY PHARMACEUTICAL, INC., "ALBUTEROL" PRODUCTS LIABILITY LITIGATION.

_____

LEWIS J. SAUL, Esq., Plaintiffs' Steering Committee Member,

      Movant-Appellant,

v.

PLAINTIFFS' STEERING COMMITTEE,

      Respondents-Appellees.

No. 99-8062

(D.C. No. 94-MDL-1013)
(D. Wyo.)

---

**ORDER AND JUDGMENT** [*]

---

Before **HENRY, BRISCOE,** Circuit Judges , and **SHADUR,** District Judge .[**]

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] The Honorable Milton I. Shadur, United States District Court, Northern District of Illinois, sitting by designation.

Lewis Saul appeals an award of $700,000 in attorney fees in connection with a class action settlement. We exercise jurisdiction under 28 U.S.C. § 1291, affirm and remand.

I.

This dispute over attorney fees stems from the settlement of a class action involving a pharmaceutical product known as "Albuterol." See In re Copley Pharmaceutical, Inc. , 1 F. Supp. 2d 1407, 1408 (D. Wyo. 1998). After more than a month of trial, the parties agreed to a settlement of approximately $150 million. The district court approved the settlement and awarded the plaintiffs' attorneys $19.5 million in fees, "to be allocated amongst themselves by class counsel." Id. at 1418.

Lead Counsel ultimately submitted a proposed allocation to the district court. See In re Copley Pharmaceutical, Inc. , 50 F. Supp. 2d 1141, 1145-46 (D. Wyo. 1999) (" Reconsideration Order "). The court found the proposed allocation to be "fair and reasonable," and approved the plan. The plan distributed fees to nineteen attorneys or law firms, including the following:

| Attorney | Discovery & pretrial work | Trial prep & trial | Meetings & other presettle-ment work | Post-settle-ment work | Post-settle-ment claims office | Total hours | Fee allocation |
|---|---|---|---|---|---|---|---|
| Peter Brodhead | 830.05 | 1078.45 | 0 | 272 | 0 | 2180.50 | $2,391,580 |
| Michael O'Donnell | 23.50 | 1016.10 | 21 | 200.80 | 0 | 1261.40 | $750,000 |
| Paul Rheingold | 1367.25 | 353.25 | 191 | 27 | 0 | 1938.50 | $1,030,000 |
| Lewis Saul | 1213.20 | 975.25 | 46 | 175.15 | 0 | 2409.60 | $700,000 |
| David Suggs | 842.20 | 1152.85 | 0 | 0 | 295.90 | 2290.95 | $2,390,167 |

Reconsideration Order, 50 F. Supp. 2d at 1146-47.

Five of the nineteen attorneys (including O'Donnell, Rheingold, and Saul) objected to the approved allocation and filed motions for reconsideration, which were denied by the court after holding a hearing and conducting a "de novo review of its prior allocation." Id. at 1147-48 & n.6, 1150. The court explained that because "class counsel could not reach a unanimous stipulation," it was both necessary and appropriate to give "substantial deference to Lead Counsel's proposed allocation." Id. at 1149. The court also thoroughly explained its methodology and took into account the factors relevant to percentage fee awards. See Brown v. Phillips Petroleum Co., 838 F.2d 451, 454-55 (10th Cir. 1988); Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).[1]

---

[1] The so-called "Johnson factors" include:

(continued...)

3

The district court affirmed the amounts previously allocated to Lead Counsel, Brodhead and Suggs.  The court found that Brodhead's award of $2,391,580 was reasonable because Brodhead (1) logged more than 1800 of his 2180.50 hours in the "crucial phases" (early in the litigation through trial); (2) took or defended 23 depositions; (3) played an integral role in the discovery process and "in arguing significant motions that were very beneficial to the clients;" (4) helped present almost all of the testimony and cross examine almost all of the witnesses at trial; and (5) "abandoned his normal practice" in 1995 as a result of the class action.    Id. at 1152.  In sum, said the district court, the factors of "time and labor, novelty and difficulty, preclusion of other employment, amount involved and results obtained, experience (admitted 1979) and reputation of Mr. Brodhead, as well as undesirability of the case and nature and length of the relationship" all supported Brodhead's award.    Id.  The court also found that

---

[1](...continued)
(1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee – this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Brown, 838 F.2d at 454-55.

Suggs' award of $2,390,167 was reasonable, because Suggs (1) contributed "almost 2000 hours" during the "critical phases" of the litigation, a total that was surpassed only by lead counsel; (2) took or defended 13 depositions; (3) played an integral role in the discovery process by "arguing and briefing major pretrial issues;" (4) had "a significant impact" in the settlement of the case.    Id. at 1152-53.  As with Brodhead, the court concluded that the factors of "time and labor," "novelty and difficulty," "preclusion of other work," and "experience and reputation" all supported Suggs' award.    Id. at 1153.

In addressing the arguments advanced by the objectors, [2] the district court initially observed that because it was working with a finite amount of money, "when one person gets more, another must get less."    Id.  With respect to O'Donnell, the court found that his award of $750,000 was reasonable because O'Donnell was not "significantly involved" in the discovery and early phases of the litigation.   Id. at 1155.  The court noted that O'Donnell admirably performed the "monumental task" of preparing for trial and "handl[ing] the claims of two clients for Lewis Saul" in only three and a half months, but "did not share the significant risks of other trial counsel who had been involved with th[e] case since its inception."   Id.  Furthermore, the court reasoned that O'Donnell's award

---

[2] The arguments of two of the objectors, Charles Schmidt and Donald Edgar, are not relevant to this appeal.    See Reconsideration Order  , 50 F. Supp. at 1155, 1156-57.

was "approximately 4.03%" of the $19.5 million fund even though his hours were "only 2.97% of the total hours submitted." Id. Consequently, the court recognized that several factors weighed in favor of awarding O'Donnell a substantial sum, but concluded that the nature of O'Donnell's involvement supported "a smaller fee than the other trial counsel." Id.

The district court conducted a similar analysis with respect to Rheingold. The court acknowledged that Rheingold made "significant contributions" that deserved to be rewarded, including the taking or defending of 10 depositions. The court further stated that Rheingold's firm provided "significant work in the early part of th[e] case" and "an associate for part of the trial." Id. Thus, the factors of "time and labor, novelty and difficulty, requisite skill, and experience and reputation" all supported a large award. Id. However, the court rejected the argument that Rheingold was entitled to more than $1,030,000, which was already "the largest sum of any class counsel member who did not participate in the trial." Id. The court explained that Rheingold may have "negatively affected the class" by joining in an effort to decertify the class and by going against the wishes of lead counsel on another matter. Id. The court went so far as to say that it might have been proper to give Rheingold "a smaller award," but decided to leave Rheingold's previous allocation intact. Id.

Lastly, the district court overruled Saul's objections to his fee award. The

6

court began by acknowledging the involvement of Saul's firm in "critical aspects" of the case:

> Mr. Saul was involved in this case from its infancy. It was he and Lead Counsel who first filed this class action. Mr. Saul's firm assisted in several aspects of discovery, assisted in class certification, was responsible for publishing the class notice, prepared expert reports, contributed to pretrial motions, and sent a junior associate to help at the trial. The Court has no doubt that Mr. Saul's involvement in the early (particularly pre-MDL) phases of this case was substantial.

Id. at 1156. Nonetheless, the court emphasized that "after the initial phases, Mr. Saul's involvement significantly diminished." Id. The court also determined that (1) Saul could not receive "credit for being trial counsel," because O'Donnell "presented Mr. Saul's clients' cases;" (2) "junior associates and paralegals logged most of the hours" billed by Saul's firm; (3) the "experience" factor "lean[ed] slightly" in favor of a smaller award, because Saul only graduated from law school in 1990; and (4) Saul's post-MDL involvement in the case did not appear to involve "novel and complex issues of law." Id.

Saul was the only attorney to appeal. After Saul filed his notice of appeal, the district court granted a motion filed by the Plaintiffs' Steering Committee ("PSC") for "payment of attorneys' fees." The court reasoned that Saul's award was "separate from the remaining attorneys' fees awarded," and refused to "hold th[ose] fees hostage" during the pendency of Saul's appeal. Aplt. App. II at 90. The court also rejected Saul's argument that "the disposition of his fee award

7

necessarily involve[d] adjusting the other attorneys' fees." Id. at 89. The court explained that there were "several hundred thousand dollars that remain out of the $19.5 million award," and decided to "reserve" $1 million of the total award "so that sufficient funds remain pending the disposition of Mr. Saul's appeal." Id. The court created this $1 million reserve by taking a proportionate amount from the eighteen other individual awards. According to Saul, $300,000 of the $19.5 million fund remains unallocated, in addition to the $1 million reserved by the district court.

## II.

Saul's argument on appeal is relatively unambiguous. In essence, Saul claims that the district court relied on erroneous findings of fact, failed to consider other relevant facts, and generally undervalued his contribution to the Albuterol litigation when it awarded him $700,000. At a minimum, says Saul, his award should be increased by the $300,000 in unallocated funds. The PSC contends that the district court carefully examined the evidence and arguments presented by each objector, that any errors committed by the court were harmless, and that it was within the court's discretion to limit Saul's award to $700,000. The PSC also maintains that Saul's appeal is untimely and moot.

### A. Timeliness and Mootness

The PSC claims that it is improper to reach the merits of Saul's appeal for

two reasons. First, the PSC contends that Saul failed to file a timely notice of appeal. The district court approved the proposed allocation and awarded Saul $700,000 on November 23, 1998. It is undisputed that Saul filed his notice of appeal on July 1, 1999. It follows, the PSC asserts, that Saul's appeal fell outside the 30-day limit established by Federal Rule of Appellate Procedure 4(a)(1)(A). Second, the PSC maintains that Saul has already received every form of relief to which he is entitled. The PSC stresses that Saul only requested procedural remedies (rather than a specific amount of additional fees) in his motion for reconsideration. By holding a hearing and independently reviewing the proposed allocation in the  Reconsideration Order  , the PSC argues, the district court either granted Saul's requests or rendered them superfluous. According to the PSC, this makes the instant appeal moot.

PSC's "timeliness" argument overlooks a crucial fact. Within 10 days of the district court's November 23, 1998 order, Saul filed a motion for reconsideration pursuant to Federal Rule of Civil Procedure 60. Federal Rule of Appellate Procedure 4(a)(4)(A)(vi) provides that "the time to file an appeal runs for all parties from the entry of the order disposing of" such a motion. The district court denied Saul's motion for reconsideration on June 3, 1999, and Saul

timely filed his notice of appeal within 30 days of the Reconsideration Order .[3]

The PSC's "mootness" argument is similarly flawed. Saul is appealing not only the Reconsideration Order but also the November 23, 1998 order in which the district court originally approved the proposed allocation. Even if Saul did limit his motion for reconsideration to procedural matters, he would still be entitled to challenge the merits of the November 23, 1998 order on appeal. Moreover, the fact that Saul did not request a specific amount of additional fees does not mean that his motion for reconsideration sought purely procedural remedies. Saul argued that the proposed allocation did not "accurately reflect the

---

[3] The PSC also erroneously claims that Saul forfeited his right to challenge the November 23, 1998 order because his notice of appeal refers only to the June 3, 1999 order. Although litigants are "expected to carefully comply" with rules such as Federal Rule of Appellate Procedure 3(c)(1)(B),

> case law interpreting those rules is founded upon a policy which favors deciding cases on the merits as opposed to dismissing them because of minor technical defects. When a notice of appeal fails to designate the order from which the appeal is taken, our jurisdiction will not be defeated if other papers filed within the time period for filing the notice of appeal provide the "functional equivalent" of what Rule 3 requires.

Denver & Rio Grande Western R.R. Co. v. Union Pacific R.R. Co. , 119 F.3d 847, 848-49 (10th Cir. 1997) (citations omitted). Here, the exclusive purpose of the June 3, 1999 order – to which Saul specifically referred in his notice of appeal – was to review and reconsider the November 23, 1998 order. To paraphrase the Denver & Rio Grande court, the PSC "had notice of the subject of the appeal, had copies of the pertinent orders, and thus suffered no prejudice from the omission." Id. at 849.

10

services" or "properly credit the contribution" of attorneys like himself. Appellees' Motion for Summary Disposition, Exh. C, at 7. He also argued that his award, in comparison to the awards received by trial lawyers such as Brodhead and Suggs, was "so disproportionate as to be manifestly unfair." Id. at 11. Saul's motion for reconsideration may have been short on specifics, but the intent of the motion clearly was to obtain additional fees.

## B. Saul's Fee Award

Our review of the district court's fee allocation is limited. As we explained in Brown, "[a]n award of attorneys' fees is a matter uniquely within the discretion of the trial judge who 'has intimate knowledge of the efforts expended and the value of the services rendered.'" 838 F.2d at 453 (quoting United States v. Anglin & Stevenson, 145 F.2d 622, 630 (10th Cir. 1944)); cf. Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) (indicating that a district court has discretion to determine the amount of a fee award because of its "superior understanding of the litigation"). As a result, the district court's "experience with and knowledge about the course of the litigation compels appellate court deference to his determination in the absence of an abuse of discretion." Brown, 838 F.2d at 453 (citing Lucero v. City of Trinidad, 815 F.2d 1384, 1386 (10th Cir. 1987)). A district court abuses its discretion "when it bases its decision on an erroneous conclusion of law or when there is no rational basis in evidence for its ruling."

11

Shaw v. AAA Eng'g & Drafting, Inc., 213 F.3d 538, 542 (10th Cir. 2000); see also Ohlander v. Larson, 114 F.3d 1531, 1537 (10th Cir. 1997) (stating that an abuse of discretion occurs when "the trial court fails to consider the applicable legal standard or the facts upon which the exercise of its discretionary judgment is based").

First, Saul notes that the district court mistakenly identified his year of graduation as 1990, when in fact he graduated in 1980. He then emphasizes the district court's ruling that the "experience" factor supported a substantial award for Brodhead, who was admitted in 1979. Second, Saul asserts that the district court failed to take into account that he contributed more than 2188 hours during the pretrial and trial phases of the litigation. According to Saul, his total of 2188 hours during these crucial phases is second only to that of Lead Counsel. Third, Saul argues that the district court's statement that most of his work was pre-MDL is both inaccurate and irrelevant. Saul contends that his firm logged approximately 115 hours prior to the issuance of the MDL transfer order, see id. at 15-32, and that in any event there is no authority for "the proposition that pre-MDL work central to the case should be discounted." Appellant's Opening Brief at 14. Fourth, Saul maintains that the district court failed to acknowledge that members of his firm took or defended 19 depositions. Saul claims that by the district court's count, lead counsel took or defended 25 depositions, Broadhead

12

took or defended 23, Suggs took or defended 13, and Rheingold took or defended only 10. [4]

Saul's arguments are far from frivolous, but they are insufficient to establish an abuse of discretion. First, the district court's finding that Saul graduated in 1990 is admittedly erroneous, but we would be hard pressed to conclude that the court abused its discretion on the basis of that relatively minor error. Second, contrary to Saul's assertions, the district court did account for his post-MDL efforts prior to and during trial. The court stated expressly that Saul billed more than 2188 hours in connection with "critical aspects" of the case. Reconsideration Order, 50 F. Supp. 2d at 1156; see also id. (commenting that "junior associates and paralegals" logged approximately 75% of the hours billed by Saul's firm). More importantly, however, the court found that Saul's "post-MDL involvement" did not encompass "novel and complex issues of law." Id. The court made it perfectly clear that Saul's $700,000 award was based on "not

---

[4] The PSC contends that Saul waived these arguments by failing to present them to the trial court. The PSC notes that Saul did not specifically compare his award to those received by other attorneys and "never requested a specific dollar amount from the District Court." Appellees' Response Brief at 7. This is all true, but it does not mean that Saul is raising a "new" issue on appeal. From the beginning, Saul's argument has been that he is entitled to additional attorney fees. His argument in this appeal is the same. Although the specifics of his position have admittedly changed, Saul is using the existing record to make the best appellate case he can. All of the evidence cited by Saul on appeal was available to (and presumably reviewed by) the district court.

13

only the quantity, but [also] the quality" of Saul's work.  Id.  Nothing in the appellate record casts doubt on the district court's  qualitative  assessment of Saul's contributions.  Third, Saul's recitation of the number of depositions each attorney took or defended also ignores the qualitative aspect of the district court's judgment.  For instance, the district court stressed the "skill and effectiveness" displayed by lawyers from Rheingold's firm in their depositions.  Id. at 1154; see also Aple. Br. at 14 (asserting that Rheingold "personally deposed several key liability witnesses" and meaningfully assisted in "expert witness discovery and identification").  The court did not make a similar observation about Saul's performance.  Likewise, the district court stated on the record that the "novelty and difficulty" factor supported a higher award to Brodhead and Suggs.  Reconsideration Order  , 50 F. Supp. 2d at 1152, 1153;    see also Aple. Br. at 16 (asserting that the depositions conducted by Brodhead and Suggs involved "complex scientific issues, including bacteriology, manufacturing, pulmonology and chemistry").  The court made no such observation for Saul.

None of this is to say that the district court's allocation of fees was necessarily perfect.  However, our task is not to independently assess the merits of each attorney's performance and fine-tune individual fee awards.  Instead, our job is to determine whether the district court abused its discretion by "ma[king] a clear error of judgment or exceed[ing] the bounds of permissible choice in the

14

circumstances." Beck v. Northern Natural Gas Co., 170 F.3d 1018, 1025 (10th Cir. 1999) (citation omitted). In hindsight, it may have been acceptable for the district court to award more money to Saul or less money to Rheingold. But after presiding over months of litigation, conducting a thorough review of the evidence, and faithfully applying the relevant law, the court decided not to do so. The district court still awarded Saul the sixth highest sum of any attorney, and, with the exception of Rheingold, awarded greater sums only to those attorneys who acted as trial counsel. While the district court's calculation was necessarily imprecise, it cannot be described as exceeding the bounds of permissible choice. All in all, the district court fairly and skillfully performed the unenviable job of allocating a fixed amount of money among 19 attorneys.

AFFIRMED and REMANDED to the district court with directions to disburse any amounts remaining in the fund.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

15